# In the
# United States Court of Appeals
## For the Seventh Circuit
———————————

Nos. 07-1474 & 07-1484

IN RE COMDISCO, INC.,

APPEALS OF PHILIP A. HEWES, *et al.*

———————————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 06 C 4685 & 06 C 4686—**Robert W. Gettleman**, *Judge.*

———————————

ARGUED NOVEMBER 26, 2007—DECIDED AUGUST 13, 2008

———————————

Before BAUER, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.*    Philip Hewes, John Vosicky, Thomas Flohr, Jack Slevin, and a large group known as "Certain SIP Claimants" (collectively, "the Claimants") are former executives and high level employees of Comdisco, Inc. As part of a new shared investment plan sponsored by Comdisco, in 1998 they borrowed money from participating banks ("Lenders") to purchase shares of Comdisco. To secure the loans, they executed promissory notes in their personal capacity; Comdisco acted as guarantor of the notes. Comdisco turned out not to be such a great bet: in 2001, it filed for bankruptcy, triggering a condition of

default on the notes and making full payment due immediately. Comdisco settled its guarantor obligation to the Lenders for a lump sum payment in exchange for an assignment from the Lenders to Comdisco of the right to collect payment on the notes from the Claimants.

The subrogation rights arising from the guarantor's payment of the lump sum to the Lenders became the *res* of a Litigation Trust. Creation of this Trust was authorized by the Comdisco Plan of Reorganization ("Plan"). The Trust assets eventually included not only the subrogation rights, but also the notes.

The trustee sought to enforce the notes against the Claimants, relying on their promise to repay the amounts borrowed to pay for the stock. They resisted and brought a motion in bankruptcy court to terminate the Trust, apparently on the theory that after the Trust terminates no one may collect on the notes and their liability would be extinguished. The bankruptcy court denied the motion, the district court affirmed, and the Claimants now appeal to this court. We conclude, however, that we lack appellate jurisdiction because the district court's order does not meet even the flexible finality standard embodied in 28 U.S.C. § 158(d). We therefore dismiss the appeal for want of jurisdiction.

# I

The chronology of events that led to the Trust, though undisputed, is important both to an understanding of the dispute between the parties and to our concern about appellate jurisdiction. We therefore recount it briefly here.

On July 16, 2001, Comdisco filed for bankruptcy. Roughly eleven months later, on June 13, 2002, the parties filed the First Amended Joint Plan of Reorganization, which authorized the creation of the Litigation Trust and the appointment of a trustee. On July 15, 2002, Exhibit C-2 (Distribution Agreement) to the Plan was filed. The bankruptcy court entered its order confirming the Plan on July 31, 2002. Once the Plan was confirmed, the Trust came into being. Its assets included "those assets to be transferred to and owned by the Litigation Trust . . . , which are comprised of the SIP Subrogation Claims" (defined as "claims of Comdisco against any SIP Participant resulting from payments made to the SIP Lenders under the SIP Guarantee Agreement, or otherwise in respect of the SIP Notes, against any SIP Participant"). On December 7, 2004, the Trust was amended to expand the definition of Trust Assets so that it explicitly included the SIP Note Claims. Finally, on December 9, 2004, the bankruptcy court approved the settlement between Comdisco and the Lenders, in which the rights under the notes were transferred to the Trust in exchange for a payment of over $126 million to the Lenders.

## II

This is an adversary proceeding in which the trustee is attempting to collect funds for the Trust. The trustee takes the position that the Claimants (who include all of the people who borrowed money to purchase the SIP stock and who signed the promissory notes) must make good on the promissory notes they signed, despite

the fact that the stock that Claimants bought with the borrowed money may now be worthless. The Claimants do not want to pay up. They argue instead that the Trust should be terminated because it has fulfilled its main purpose, which they characterize as "pay[ing] the C-4 creditors," who are defined in the plan as the people holding "general unsecured claims against Comdisco." There are also two groups of C-5 creditors whose interests have some bearing on this case. Class C-5A includes those who have an allowed interest in Comdisco, while Class C-5B includes people with allowed subordinated claims against Comdisco. Even though one of the stated purposes of the Trust is the liquidation of the Trust assets (that is, reducing the notes to cash by forcing payment from the Claimants), the Claimants argue that the C-4 creditors have already received sufficient recovery. (The Claimants, it is worth noting at this juncture, have since been classified as C-5 creditors.) As the Claimants see it, liquidation of the notes would result in a recovery for the C-4 creditors in an amount exceeding 100% of the allowed amount of their claims. Such an outcome, they conclude, is forbidden by both the Plan and the Bankruptcy Code.

The appellees point out that the Plan involved a compromise between the interests of the C-4 and the C-5 creditors. It embodies an escalating sharing arrangement between the two groups, under which the C-5 creditors begin sharing in the proceeds from the wind-down of Comdisco before the C-4 creditors receive a 100% recovery on their claims. (Ordinarily equity holders are at the back of the queue, and so they would not begin to collect until all

creditors have been satisfied.) In exchange for giving up their right to full reimbursement before the C-5 creditors begin to collect, the C-4 creditors retained an interest in the proceeds of the estate even after they recovered 100% of their claim, if and only if distributions reached such high levels. It is also worth noting that the C-4 creditors excluded interest from the amounts of their allowed claims, and thus the "100%" number being discussed did not really reflect 100% of the claims.

The bankruptcy court denied the Claimants' Termination Motion, finding that the purpose of the Trust had not been accomplished; that none of the termination events listed in the Trust instrument had occurred; that a recovery beyond 100% of the allowed C-4 claims was contemplated by the parties to the Plan; that such a recovery and a splitting of the Trust assets between the C-4 creditors and the C-5 creditors does not offend the Bankruptcy Code; that the property rights involved have vested and should not be readjusted now; and that the proposed Trust termination would be an unwarranted Plan modification after substantial consummation of the Plan. The Claimants then appealed to the district court.

The district court found that the adjudication of the Claimants' Termination Motion was a core proceeding under 28 U.S.C. § 157(b)(1) and denied that motion. It held that because the bankruptcy judge's order disposed of a discrete dispute, it had jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a)(1) (final judgments). Tellingly, however, the court also observed in a footnote that even if the order were interlocutory (as the trustee had argued), it

could still entertain the appeal under § 158(a)(3) which allows interlocutory appeals to the district court with the court's permission. Although the difference between subparts (a)(1) and (a)(3) did not matter for the district court, it does for this court. With the exception of a relatively new procedure for certain interlocutory appeals that has not been invoked here, see § 158(d)(2), the courts of appeals have jurisdiction only over appeals from final decisions entered by district courts under § 158(a) and bankruptcy appellate panels under § 158(b). See § 158(d)(1).

### III

Before we may reach the merits of this appeal, we must ensure that we have appellate jurisdiction. Neither party has contested jurisdiction at this stage, despite the fact that the district court in essence ruled in the alternative that it could resolve the case under either § 158(a)(1) or § 158(a)(3). We, however, cannot finesse the issue. We must decide whether the bankruptcy judge's decision *not* to terminate the Litigation Trust, as affirmed by the district court, meets the standards of finality that have been established for § 158(d) appeals.

No one doubts that the bankruptcy judge resolved one particular issue: the question whether the time has come to terminate the Trust because its purposes have been fulfilled. If the bankruptcy court had ruled in favor of the Claimants and terminated the Trust, then this part of the case would be over, and the aggrieved trustee and other beneficiaries of the Trust would have been entitled to

appeal to the district court under § 158(a)(1) and then either side could have continued on to this court using § 158(d)(1). But that is not what happened. Instead, by rejecting the termination motion, the bankruptcy court was allowing the Trust to continue and further disbursements to be made in accordance with its terms. Just as an order in a simple case between two parties that grants summary judgment on the whole case to one side is appealable under 28 U.S.C. § 1291, but an order denying summary judgment is not (because proceedings will continue in the district court), it seems that in this case an order granting termination would have been appealable but an order denying termination ought not to be appealable.

It is well established that the concept of finality for purposes of bankruptcy appeals is more flexible than the one that applies to ordinary appeals governed by 28 U.S.C. § 1291. Thus, the First Circuit observed that "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case . . . ." *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983) (emphasis removed). But what exactly is a "discrete dispute," and how does it differ from merely a "discrete issue" within a dispute? *Saco* offers some insight into the answer to that question. There, the court went on to note, for example, that "any dispute between a bankrupt and his creditors over a claim or priority was a separate 'proceeding,'" *id.* at 445. It concluded that for purposes of the predecessor statute it was applying, 28 U.S.C. § 1293(b), a "'final judgment, order, or decree' . . . includes an order that conclusively

determines a separable dispute over a creditor's claim or priority." *Id.* at 445-46.

This court offered a rule-of-thumb for deciding when a separable dispute exists in bankruptcy many years ago, in *In re Morse Electric Co.,* 805 F.2d 262 (7th Cir. 1986). There we said that "[a] disposition of a claim that would be final as a stand-alone suit outside of bankruptcy is also final under § 158(d) in bankruptcy. Such a claim is far enough along to be intelligently resolved, without duplicative appellate review of the same creditor's situation." *Id.* at 265. Accord, *Zedan v. Habash,* 529 F.3d 398, 402 (7th Cir. 2008). The final disposition of an adversary proceeding within a core proceeding thus falls within our jurisdiction. *Id.* at 402-03.

Unfortunately, this area still suffers from a lack of clarity. The illustrative list of orders that are either found to be final for purposes of appeals under § 158(d) or that are not considered final that is provided in 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3926.2, at 298-324 (2d ed. 1996), is dismayingly long and inconsistent. One point that comes through, however, is that a decision or order that resolves only an issue that arises during the administration of a bankruptcy estate is too small a litigation unit to justify treatment as a final judgment.

The orders described by Wright, Miller, and Cooper that resolve a discrete adversary proceeding generally fit within the description in *Morse* of a disposition that would be final if we imagined the dispute as a stand-alone case rather than as part of the larger bankruptcy proceeding. In

the matter before us, by contrast, the question is whether the purposes of the Litigation Trust have been fully achieved. That is something that might change from day to day. Both the bankruptcy court and the district court thought that the answer was "no," as of the time the Claimants made their motion. (Our review of the entire file has given us no reason to doubt the correctness of this ruling.) This is exactly what a court would say if this had been a separate proceeding, and in that setting it would be clear that the order rejecting the Claimants' argument was not final. It is equally apparent here: monies are being disbursed all the time, as the trustee tries to collect new funds for the Trust, and the situation is constantly shifting.

The most one can say about the order from which the Claimants are trying to appeal is that the bankruptcy court does not agree with their argument that satisfaction of the "100%" recovery for the C-4 claimants is, by itself, reason enough to terminate the Trust. We recognize that it is possible to think of this as a discrete issue, but there is a difference between a discrete issue and a discrete dispute, and the ruling here fails to qualify as a separable dispute.

The appeal is DISMISSED for want of jurisdiction.