In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1271

IN RE:

LONNIE E. MCKINNEY,

*Debtor-Appellee*.

APPEAL OF:

SALTA GROUP, INC.

Appeal from the United States District Court
for the Central District of Illinois.
No. 06 C 1194—**Joe Billy McDade**, *Judge*.

ARGUED DECEMBER 8, 2009—DECIDED JUNE 23, 2010

Before EASTERBROOK, *Chief Judge*, and ROVNER and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge*. Lonnie McKinney owned and lived in a duplex for which he owed $5786.66 in property taxes for the year 2001. Peoria County, where the duplex is located, sold the tax debt to Salta Group at its annual tax sale in 2002. At a tax sale in Peoria County, an investor can bid on delinquent taxes by announcing what interest rate the investor will charge on the delin-

quent fees. The lowest bidder (he who proposes the lowest interest rate) will own the tax debt in return for his payment of the full value of the tax debt plus costs.

As owner of the tax debt, Salta Group could make money in two ways. First, McKinney had two years to pay the debt plus the interest to the county, who would pass it on to Salta Group; this would generate revenue for Salta Group based on the interest rate it charged. Second, if McKinney did not pay off the debt in two years, Salta Group could get a tax deed to the property. McKinney did not pay off the debt and on April 21, 2005, he was notified that the duplex had been sold for delinquent taxes but that he could redeem the property until September 1. After that date, a hearing would be held on the issuance of a tax deed to Salta Group.

On August 31, 2005 (one day before the end of the redemption period), McKinney filed for Chapter 13 bankruptcy. In his proposed bankruptcy plan, he was given five years to pay off the tax debt with interest. Salta Group objected to the plan, arguing that pursuant to 11 U.S.C. § 108(b), which provides a time limit for curing a default, McKinney had no more than 60 days to pay the tax debt. Salta Group argued that if McKinney did not pay his taxes within 60 days, it was entitled to a tax deed on the property. (Indeed, Salta Group got a tax deed in state court soon after the Chapter 13 filing; the bankruptcy court voided the deed because it violated the bankruptcy stay. Salta Group does not appeal the order declaring the deed void.) The bankruptcy court disagreed and denied Salta Group's objection. Salta

Group appealed the denial of the objection to the district court, which affirmed the bankruptcy court.

Salta Group's appeal has now reached us but we must first assess whether we have jurisdiction to consider it. Salta Group, remember, is not appealing an order confirming the proposed bankruptcy plan (indeed that order has not been entered because Salta Group asked for and was granted a stay of the proceedings in the bankruptcy court), but instead is simply appealing the denial of its objection to the plan. Salta Group argues that we have jurisdiction to hear the appeal under 28 U.S.C. § 158(d)(1), which provides for appeals from final decisions of the bankruptcy court, as well as a series of interlocutory orders not relevant here. McKinney, for his part, argues that the decision below was not sufficiently final to vest jurisdiction in this court, because while the bankruptcy court denied the objection to the confirmation of the plan, future proceedings with regards to Salta Group's rights are still pending. For instance, Salta Group has not submitted its proof of claim to the bankruptcy court and the interest rate that Salta Group is owed has not been determined. (Salta Group argued that because it was entitled to payment within 60 days, its claim could not be considered part of the estate). McKinney argues that Salta Group should be able to appeal only when the plan, which establishes the amount of Salta Group's claim and an appropriate interest rate, is confirmed.

The proposed basis for our jurisdiction, 28 U.S.C. § 158(d)(1), gives us jurisdiction over appeals "from all final decisions, judgments, orders, and decrees entered

under subsections (a) and (b) of [§ 158]." This appeal was taken from the district court, which claimed jurisdiction under subsection (a) as an appeal from the final judgment of the bankruptcy court. So, our jurisdiction depends on whether what the district court heard was an appeal from a final judgment or order of the bankruptcy court.

Finality is a fairly strict concept in most federal litigation. Generally, a party must wait for the entire case to be disposed of before taking an appeal. *See Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 605 (2009). But in the bankruptcy context, some decisions are more final than others. In bankruptcy we deal with the concept of "flexible finality." *See Zedan v. Habash*, 529 F.3d 398, 402 (7th Cir. 2008). While perhaps a contradiction in terms, the concept of flexible finality is based both on the traditional approach to bankruptcy proceedings and the commonsense understanding that the breadth of bankruptcy cases necessitates an approach that allows for the efficient resolution of certain discrete disputes that may arise in a given bankruptcy.

Bankruptcies are sprawling events that are made up of smaller, discrete proceedings. *See In re Morse Elec. Co.*, 805 F.2d 262, 264 (7th Cir. 1986). Then-Judge Breyer, writing for the First Circuit, explained that the term "proceeding" within a bankruptcy is actually a term of art, traditionally referring to "any dispute between a bankrupt and his creditors over a claim or priority." *In re Saco Local Dev. Corp.*, 711 F.2d 441, 445 (1st Cir. 1983) (analyzing finality under a predecessor jurisdictional

statute, 28 U.S.C. § 1293(b)). Judge Breyer, in the modern context, characterized these proceedings as "contested matters, adversary proceedings, and plenary suits" and described these smaller proceedings as the judicial units from which appeals should be taken. *Id.* (quotation omitted). "[A] 'proceeding' within a bankruptcy case [is] the relevant 'judicial unit' for purposes of finality, and . . . a 'final judgment, order, or decree' . . . includes an order that conclusively determines a separable dispute over a creditor's claim or priority." *Id.* at 445-46; *see In re Comdisco, Inc.*, 538 F.3d 647, 651 (7th Cir. 2008).

That much is clear; the hard part is figuring out what stage of these proceedings must be terminated for finality to attach. As we have noted, "this area still suffers from a lack of clarity." *Comdisco,* 538 F.3d at 651. Generally, the easiest way to tell whether an order is sufficiently final in the bankruptcy context is whether it resolves a proceeding within the bankruptcy that would be a freestanding lawsuit if there were no bankruptcy action. *Zedan*, 529 F.3d at 402 ("[T]he test we have utilized to determine finality under § 158(d) is whether an order resolves a discrete dispute that, but for the continuing bankruptcy, would have been a standalone suit by or against the trustee."); *Morse Elec. Co.*, 805 F.2d at 265 ("A disposition of a claim that would be final as a stand-alone suit outside of bankruptcy is also final under § 158(d) in bankruptcy."). But, the "standalone" test leaves room for enough interpretation to make the "illustrative list of orders that are either found to be final for purposes of appeals under § 158(d) or that are not considered final . . . dismayingly long and incon-

sistent." *Comdisco*, 538 F.3d at 651 (citing 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3926.2, at 298-324 (2d ed. 1996)).

In this case, Salta Group's claim does not present an issue that would ordinarily be a freestanding lawsuit. Salta Group simply objects to the proposed plan for the management of McKinney's debts. The bankruptcy court rejected the objection and ordered that there be a continued hearing on "the amount of Salta's secured claim and the interest rate to be paid" on that claim. In its opinion denying Salta Group's objection, the bankruptcy court found that the amended plan "treats SALTA's claim permissibly by classifying it as fully secured and proposing to pay it in full over the term of the plan. SALTA has not filed a proof of claim, however, having taken the position that it is not a creditor and has no claim [i.e., that the tax debt must be paid outside the bankruptcy]. That position having now been rejected, the issue of the proper amount of SALTA's claim and the interest rate to be paid . . . must now be addressed and a hearing will be scheduled."

Orders that dispose of a creditor's claim count as final for bankruptcy purposes "when the claim has been accepted and valued, even though the court has not yet established how much of the claim can be paid given other, unresolved claims." *Morse Elec. Co.*, 805 F.2d at 264. Salta Group argues that its claim has been valued even though it really hasn't submitted the claim. Salta Group argues that figuring out the actual amount of its claim is simply a "ministerial task." *See Saco Local Dev. Corp.*, 711 F.2d at 446 ("[O]rders in ordinary cases that effec-

tively settle a controversy and merely leave the court with ministerial or mechanical tasks concerning damages are normally viewed as final, even if a precise damage figure has not been committed to paper."). Therefore, according to Salta Group, the situation here is analogous to the "stand-alone" situations we described above.

Fundamentally, Salta Group's argument is that it has only one horse running in this bankruptcy—whether the tax lien it holds on McKinney's duplex is properly considered part of the bankrupt's estate. Now that the bankruptcy court found that the tax lien is properly included (and subject to whatever plan is settled on), Salta Group believes that its horse is out of the race and the dispute has been resolved. In *UAL Corp.*, we noted that "[i]n a strict sense a Chapter 11 bankruptcy is not final until a plan of reorganization is confirmed. But as soon as the right of a particular creditor is determined, the ruling determining that right is appealable, although until the plan is confirmed there will be uncertainty concerning how much of his right he will actually be able to enforce." *In re UAL Corp.*, 411 F.3d 818, 821 (7th Cir. 2005). We have analogized the finality determination to the finality determination in a civil suit. "A judgment does not lose its finality merely because there is uncertainty about its collectibility, corresponding to uncertainty about how many cents on the dollar the creditor will actually receive on his claim once all the bankrupt's assets are marshaled and compared with the total of allowed claims, and the priorities among those claims are determined." *In re Szekely*, 936 F.2d 897, 899 (7th Cir. 1991). In *UAL Corp.* we implied that some proceedings that are not akin to stand-alone lawsuits may be

appealed before the confirmation of the plan. There, we held that a bankruptcy court's decision to vacate a previous order establishing the status of certain airplane leases within United Airlines' bankruptcy was sufficiently final to be appealable. *UAL Corp.*, 411 F.3d at 822. An appeal was proper even though the final bankruptcy plan hadn't been confirmed because the decision to vacate the previous order "fixed the bank's status as a creditor, determining both the amount due it and the priority of its claim." *Id.* We offer no opinion on whether our decision in *UAL Corp.* opened up a new universe of appealable bankruptcy orders because, under *UAL Corp.*'s specific terms, the order below did not fix Salta Group's status as a creditor. It determined neither the amount due to Salta Group nor the priority of its claim.

Salta Group has not even submitted its claim to the bankruptcy estate and its claim has therefore not been valued as part of the bankruptcy estate. *See In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1299 (7th Cir. 1997) (finding that an order that failed to "ultimately establish" the creditor's entitlement to funds was not final and therefore unappealable). While the issue that Salta Group cares about may have been resolved, its basic dispute with the bankrupt estate has not been resolved and therefore the judgment below is not final. When we talk about finality in bankruptcy we talk about proceedings resolving disputes, not issues. "[A] decision or order that resolves only an issue that arises during the administration of a bankruptcy estate is too small a litigation unit to justify treatment as a final judgment." *Comdisco*, 538 F.3d at 651; *see also id.* at 652 ("[T]here is a

difference between a discrete issue and a discrete dispute, and the ruling here fails to qualify as a separable dispute."); *Saco Local Dev. Corp.*, 711 F.2d at 445-46 ("[W]e conclude that a 'final judgment, order, or decree . . . includes an order that conclusively determines a separable dispute over a creditor's claim or priority."). While Salta Group may claim that it does not care about the interest rate it is subject to, or the way its claim is treated within the bankruptcy plan, those issues must be resolved before it can take an appeal. Accordingly, we have no jurisdiction over this appeal.

Lonnie McKinney died fifteen days after oral argument. Both his attorneys and Salta Group's have submitted briefs explaining how his death affects the outcome of his case. McKinney's attorneys explain that the continuation of the proceedings depends on whether continuing is in the best interest of the parties and whether the case may proceed as though McKinney's death has occurred. *See* Fed. R. Bankr. P. 1016. The parties dispute whether both conditions are satisfied. Salta Group further argues that new representatives must be brought in to represent McKinney's estate and that the failure of McKinney's counsel to do so should result in dismissal. *See* Fed. R. Bankr. P. 7025. Because we don't have jurisdiction over the matter, we take no position on the parties' arguments. The effects of McKinney's death will be appropriately taken up by the bankruptcy court in the first instance.

The appeal is DISMISSED for want of jurisdiction.