NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 25, 2011[*]
Decided May 25, 2011

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

No. 10-3637

| | |
|---|---|
| In the Matter of: USA BABY, INC., *Debtor.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| Appeal of: SCOTT WALLIS | No. 09 C 4989 |
| | Joan Humphrey Lefkow, *Judge.* |

**O R D E R**

Creditors forced USA Baby, a closely held corporation, into bankruptcy, and a trustee was appointed. The trustee declined to pursue unliquidated, speculative claims, a decision that was opposed by no one except Scott Wallis, the company's president and a 5% stockholder. Wallis, acting on his own and not as an officer of USA Baby, moved for permission to stand in for the trustee to pursue those claims. The bankruptcy court denied Wallis's motion, and the district court upheld that decision. Wallis has now appealed to this court, and we affirm the decision of the bankruptcy court.

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

USA Baby was formed in 2003 to franchise stores selling furniture and other products for babies and children. It operated no stores of its own. Wallis served in various roles, including chief financial officer, chief operating officer, and eventually as USA Baby's president. The corporation quickly developed problems with its franchisees; both sides alleged breaches of duties and obligations, particularly after Wallis gained greater management control. *See generally*, Janet Sparks, *USA Baby woes*, FRANCHISE TIMES, March 2009, http://www.franchisetimes.com/content/story.php?article=01249; Janet Sparks, *USA Baby founder sues CEO for violation of shareholders' agreement*, FRANCHISE TIMES, Sept. 2007, http://www.franchisetimes.com/content/story.php?article=00518. Two of USA Baby's minority shareholders won a derivative action against management in 2007. And a number of the franchisees also filed an arbitration demand, alleging gross mismanagement, which was stayed by the bankruptcy. By 2008, Wallis concedes, approximately 38 of the remaining 44 franchisees (at one point USA Baby had 68 franchisee stores, some already had gone out of business by 2008) had stopped paying franchise royalties, an amount totaling approximately $300,000 per month.

In September 2008 creditors filed an involuntary petition under Chapter 11 of the Bankruptcy Code. *See* 11 U.S.C. § 303(b). Soon afterward, Wallis began submitting pro se filings, not in his capacity as a corporate officer, but as an interested party holding an equity stake in the company. *See id.* § 1109(b). The bankruptcy court entered an order for relief, leaving USA Baby in possession of the bankruptcy estate, but the corporation did not file the required bankruptcy schedules or statements. *See id.* § 521(a)(1). A group of franchisees, citing that failure and alleging a history of prepetition mismanagement by Wallis and the majority shareholder, asked the bankruptcy court to appoint a trustee, *see id.* § 1104(a), and convert the case to Chapter 7, *id.* § 1112(b)(1). While those motions were pending, the company filed a statement of affairs and the required schedules.

The bankruptcy court appointed Barry Chatz as trustee but denied the franchisees' motion for conversion to Chapter 7. Days later, though, Chatz filed his own motion for conversion to Chapter 7. He explained that he had met (or would soon meet) with counsel to the lenders, former and current franchisees, and the landlord of USA Baby's premises. Those discussions, said Chatz, had left him uncertain that funding to maintain a Chapter 11 reorganization could be obtained. USA Baby did not oppose this motion, nor did any interested party other than Wallis. The bankruptcy court converted the case but also allowed Chatz to continue operations for a limited time. *See* 11 U.S.C. § 721.

According to its bankruptcy schedules, USA Baby owed approximately $2.6 million to its creditors, including almost $1.2 million to Commerce Capital, LP. That debt was secured by virtually all of the company's assets, including its trademarks, franchise

agreements, and royalty payments. The company valued its trademarks and franchise agreements at $750,000, and its tangible personal property at $71,000. It had virtually no cash. USA Baby also listed receivables of $3.1 million, principally from royalties, although without giving a breakdown by amount or payor. The company listed no other assets, except for contingent and unliquidated claims purportedly worth over $10 million. These are described broadly as "monies due" from the 38 nonpaying franchisees and for unspecified "indemnification claims," as well as "possible" legal claims against 62 "potential" claimants, mostly franchisees. No estimated value or description is given for any claim against any person. Commerce Capital, rather than wait for its payout in the bankruptcy, sought and obtained relief from the automatic stay. It planned to foreclose on its lien through a sale of USA Baby's personal property; it later purchased substantially all of USA Baby's assets for $1 million and eventually sold the company's trademarks and franchise agreements to an association of 28 former USA Baby franchisees that were still operating. Wallis had voiced the only opposition, but his objection was denied as untimely.

All the while, Wallis continued to file motions and objections. Those included a motion to dismiss the bankruptcy and, when that failed, a demand that franchisees be compelled to remit unpaid royalties to USA Baby. He opposed the appointment of a trustee and the conversion to Chapter 7. At the hearing on the conversion motion, Wallis explained that he believed the company was still capable of recovery because, he asserted, he could raise $200,000 to $2 million from investors within a few months. Then after the bankruptcy court had lifted the stay for Commerce Capital, Wallis filed a motion to permit himself "in the name and place of trustee, Barry Chatz, to pursue USA Baby's assets." In that motion, which underlies the matter before this court, Wallis asserted that, through legal action and otherwise, he could "collect those monies owed to him and USA Baby." Wallis accused Chatz of neglecting his duties as trustee and cooperating with Commerce Capital to divest USA Baby of its assets.

The bankruptcy court held two hearings, both in June 2009, on Wallis's motion to stand in for Chatz. The court initially denied Wallis's motion on the understanding that the Bankruptcy Code did not authorize him to step into the role of a trustee. Upon further consideration the court vacated its ruling and conducted a second hearing. Chatz did not appear at the second hearing, apparently because he already had submitted a final report stating that USA Baby had no assets to distribute and asking to be discharged. *See* FED. R. BANK. P. 5009(a). Commerce Capital was present and explained that Chatz had gauged its interest in funding litigation to collect on the claims Wallis wanted pursued, in particular amounts due from franchisees, but the investment company was unwilling and said so to Chatz. Commerce Capital had concluded that the likely recovery from the franchisees would not justify the cost of pursuing the claims, especially since it knew that the franchisees would resist and anyway doubted their ability to satisfy a favorable judgment.

The investment bank shared Chatz's view that the claims should be abandoned unless a law firm was willing to prosecute them on a contingency basis, and Chatz had found no takers. Wallis countered that Chatz and Commerce Capital were part of a conspiracy to sell USA Baby's assets to a franchisee that had withheld royalty payments and thus driven USA Baby to bankruptcy in the first place. Wallis insisted that he would file a racketeering suit against Commerce Capital and Chatz (which he did later without success). But the bankruptcy court concluded that Wallis had not shown any misfeasance by Chatz and, thus, saw no reason to allow Wallis to act on Chatz's behalf: "[F]ocusing simply on the judgment that the trustee made not to pursue these matters, in light of the secured claim, in light of the repeated conclusions the trustee made regarding the ability to fund counsel or financing to pursue those matters, I can't find that the trustee's decision was unjustified." Wallis appealed that decision to the district court, which upheld the bankruptcy court's ruling in September 2009.

The Chapter 7 case remains open, and Chatz continues to serve as trustee. And while this appeal from the bankruptcy court's June 2009 decision has been making its way to us, Wallis has continued to litigate other issues in the bankruptcy and district courts. He filed, among others, motions for equitable relief, to disqualify the bankruptcy judge, for examination of Chatz as trustee under Federal Rule of Bankruptcy Procedure 2004, and for leave to sue Chatz. The bankruptcy court denied all of these, and Wallis appealed each ruling to the district court. None of these appeals affects the matter before us, but in early 2011, Wallis filed yet another motion, this time to compel Chatz to abandon to him "all legal claims" of USA Baby. The bankruptcy court granted that unopposed motion. *See* 11 U.S.C. § 554(b).

Wallis's appeal from the bankruptcy court's June 2009 order has now reached us, but we must first assess whether we have jurisdiction to consider it. Section 158(d)(1) of Title 28 gives us jurisdiction over appeals "from all final decisions, judgments, orders, and decrees" entered under § 158(a) and (b). The district court exercised jurisdiction under subsection (a), which authorizes appeals from final judgments of the bankruptcy court, so our jurisdiction depends on whether the bankruptcy court's order was sufficiently final. That depends, in turn, on whether the challenged decision of the bankruptcy judge resolved "'a discrete dispute that, but for the continuing bankruptcy, would have been a standalone suit by or against the trustee.'" *In re McKinney*, 610 F.3d 399, 402 (7th Cir. 2010) (quoting *Zedan v. Habash*, 529 F.3d 398, 402 (7th Cir. 2008)); *see In re Computer Learning Centers, Inc.*, 407 F.3d 656, 659-60 (4th Cir. 2005); *In re Palm Coast, Matanza Shores Ltd. P'ship*, 101 F.3d 253, 255-56 (2d Cir. 1996). The order definitively resolves Wallis's attempt to challenge Chatz's business decision to pursue potential assets of the estate on behalf of the trustee, which could have been an independent action against Chatz for breach of his duties as a trustee. *See In re Kizzee-Jordan*, 626 F.3d 239, 242 (5th Cir. 2010); *In re Resource Tech. Corp.*, 528 F.3d 467, 474

(7th Cir. 2008); *In re Northwood Properties, LLC*, 509 F.3d 15, 21 (1st Cir. 2007); *In re AroChem Corp.*, 176 F.3d 610, 619-20 (2d Cir. 1999). Thus our jurisdiction is secure.

Still, Chatz argues that the bankruptcy court's February 2011 order directing him to abandon USA Baby's remaining legal claims moots this appeal. (Chatz asserts that those claims have been abandoned to USA Baby, but in fact the bankruptcy court ordered them abandoned to Wallis. It is an open question whether a bankruptcy court may direct that assets be abandoned to a person other than the debtor, *see* Patrick A. Jackson and Elizabeth L. Dunn, *The Limits of Targeted Abandonment 'to' a Secured Creditor Under § 554*, 29 AM. BANKR. INST. J. 22 (2010), but we need not decide that issue for the purposes of this appeal.) Our ability to provide a least partial relief precludes a finding of mootness. *See In re Kmart Corp.*, 359 F.3d 866, 869 (7th Cir. 2004). What Wallis has now—any residual legal claims—is less than what he might have pursued on behalf of USA Baby if his motion to stand in for Chatz had been granted in June 2009. Commerce Capital has long since settled a number of claims with franchisees in connection with its sale of the trademarks and franchise agreements, so the value of any royalty receivables has been compromised if not extinguished. *See Commerce Capital, LP v. United Storeowners Assoc. of Baby Stores, LLC*, No. 09-07229 (N.D. Ill. Apr. 2, 2010). Though it would admittedly be difficult to fashion complete relief, by unwinding Commerce Capital's acquisition and sale of USA Baby's assets, courts "can and do order divestiture and damages in such situations." *See In re Resource Tech. Corp.*, 430 F.3d 884, 886-87 (7th Cir. 2005). We may therefore reach the merits.

In this court Wallis argues, again, that he should have been permitted to act for Chatz in collecting obligations to USA Baby that the trustee was unwilling to pursue. He maintains that Chatz breached his fiduciary duties to the estate, was not disinterested, and now adds that Chatz also was negligent. Because our review in a bankruptcy appeal is plenary, we apply the same standard that the district court did in reviewing the bankruptcy court's decision. *Kovacs v. United States*, 614 F.3d 666, 672 (7th Cir. 2010). But like the district judge, we conclude that the bankruptcy court properly exercised its discretion in denying Wallis's motion to pursue the assets of USA Baby.

Wallis argues that he did not seek to remove Chatz; instead, he wanted only to pursue an action on his behalf. There are limited circumstances under which a creditor may bring an action in place of, and in the name of, the trustee. *See Fogel v. Zell*, 221 F.3d 955, 965-66 (7th Cir. 2000); *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990); *see also In re Trailer Source, Inc.*, 555 F.3d 231, 244-45 (6th Cir. 2009); *In re Racing Srvcs., Inc.*, 540 F.3d 892, 898 (8th Cir. 2008); *In re Smart World Techs., LLC*, 423 F.3d 166, 176 (2d Cir. 2005). We have permitted this relief only when the trustee has failed to honor the creditor's priority and "unjustifiably refused" to bring an action to enforce a claim of a creditor. *Fogel*, 221 F.3d at 965. Although the bankruptcy court initially based its decision on the lack of authority allowing Wallis to

"step in" for Chatz, it ultimately rested its decision on the lack of evidence of unjustifiable action on behalf of the trustee, as do we.

We cannot conclude from this record that Chatz failed to exercise sound business judgment in his decision not to pursue the claims Wallis envisions against the franchisees and others. A trustee must exercise reasonable diligence to preserve and protect estate property. *See* 11 U.S.C. § 704(a)(1); *Cent. States, S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 572 (1985); *In re First Cent. Fin. Corp.*, 377 F.3d 209, 216-17 (2d Cir. 2004). Chatz elected not to pursue the claims because USA Baby did not have the money or a backer to finance collection activity, and because no law firm would take the claims on a contingency basis given the remote possibility of success. Commerce Capital, the creditor that would benefit most from receivables that USA Baby might recover, agreed with Chatz that the risk of pursuing these claims was too great. No other creditors, or USA Baby itself, objected to Commerce Capital's request for relief from the stay or to Chatz's no asset statement. While Wallis continues to assert that he believes he could collect on the accounts receivable, he offered the bankruptcy court no basis to rely on this assessment. Indeed, nowhere in this record do we see any evidence that Wallis ever has tried to quantify specific amounts due from particular persons, or identify bases for making claims against those persons, or assess the likelihood of recovery. Nor is there any evidence even remotely supporting his allegations of a conspiracy or conflicts of interest by Chatz.

AFFIRMED.