In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1894

SCHAUMBURG BANK & TRUST CO., N.A.,

*Respondent-Appellant*,

*v.*

R. SCOTT ALSTERDA, as the Chapter 7 Trustee for the Bankrutpcy Estate of Hartford & Sons, LLC,

*Movant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14-cv-10095 — **John W. Darrah**, *Judge*.

ARGUED NOVEMBER 3, 2015 — DECIDED MARCH 4, 2016

Before WOOD, *Chief Judge*, EASTERBROOK, *Circuit Judge*, and BRUCE, *District Judge*.*

BRUCE, *District Judge*. Schaumburg Bank and Trust Company, N.A. ("the Bank"), appeals from an order of the district court affirming a decision by the bankruptcy court that

---

* Of the Central District of Illinois, sitting by designation.

the Bank, a creditor of Chapter 7 bankruptcy debtor Hartford & Sons LLC ("the Debtor"), had not been assigned the right to pursue a claim for fraudulent transfer in state court, because that claim properly belonged to the bankruptcy estate. Neither party, in their briefs, argued that there was any issue with appellate jurisdiction in this matter. Upon our review of the record, however, we conclude that no final judgment or appealable order was entered by the bankruptcy court, and thus we lack appellate jurisdiction to review the district court's decision at this time.

I.

The parties do not dispute the underlying facts of this case. The Debtor operated a site utility construction business that primarily installed new sewer and water facilities for industrial and commercial customers. On August 30, 2013, the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. The chapter 11 bankruptcy was converted to a case under chapter 7, and R. Scott Alsterda (the "Trustee") was appointed chapter 7 trustee for Debtor's estate. The Bank holds a valid, first-priority security interest in and to all of the Debtor's assets, including accounts receivable.

*Actions of the Trustee*

After his appointment, the Trustee began investigating the Debtor's assets and liabilities, and discovered that two checks payable to the Debtor had been negotiated and deposited into the personal account of Thomas Hartford, Jr., the father of Debtor's principal Thomas Hartford III, on September 13, 2013. The checks, one from Warren F. Thomas

Plumbing Company issued on August 30, 2013, for $24,680.70, and one from Powers & Sons Construction Company Inc., issued on September 9, 2013, for $11,709.19, totaled $36,389.89. After discovering the check transfers and conducting an investigation, the Trustee concluded that both check transfers could be avoided and their value recovered. The Thomas Plumbing Company check could be avoided as a preference or fraudulent transfer under sections 544, 547, 548 and 550 of the Bankruptcy Code as well as sections 5 and 6 of the Illinois Uniform Fraudulent Transfers Act. The Powers & Sons Construction check transfer could be avoided as an unauthorized postpetition transfer under sections 549 and 550 of the Bankruptcy Code.

Before initiating adversary litigation under the Bankruptcy Code, the Trustee and Debtor's counsel engaged in settlement talks with Hartford Jr. On July 21, 2014, the Trustee filed a Motion to Approve a Settlement Agreement with Hartford Jr. in the Bankruptcy Court. Under the terms of the proposed settlement, Hartford Jr. would pay $36,389.89 to the Trustee on the behalf of the estate and would release the Trustee and estate from all claims involving the transfers. In return, the Trustee would grant Hartford Jr. a release from all claims regarding the transfers ninety-one days after the settlement payment cleared.

*Actions of the Bank*

While the Trustee was pursuing the check transfers against Hartford Jr., the Bank, on October 25, 2013, had filed a "Motion for Relief from the Automatic Stay to Exercise Its State Law Remedies with Respect to Pledged Collateral and for Other Relief" with the Bankruptcy Court.

On November 12, 2013, the Bankruptcy Court entered an order on the motion for relief. The order stated, in relevant part:

> [1] The relief requested in the Motion is granted as set forth herein.
>
> [2] The automatic stay is modified to allow Schaumburg Bank to exercise its state law remedies with respect to collateral pledged to the movant by the Debtor, and in which Schaumburg Bank asserts a valid, first-priority security interest[.]

Sometime after the entry of this order, the Bank discovered the check transfers by Hartford Jr. On April 3, 2014, the Bank filed a lawsuit against Hartford Jr. in the Circuit Court of Cook County seeking to recover from Hartford Jr. as fraudulent transfers the value of the checks. On July 30, 2014, the state court entered judgment in favor of the Bank and against Hartford Jr. in the amount of the check transfers.

*Proceedings Before the Bankruptcy Court*

On July 31, 2014, one day after the Bank obtained its judgment in the state court, the Trustee filed his motion, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, requesting the bankruptcy court enter an order approving the settlement of the potential fraudulent transfer and unauthorized postpetition transfer litigation claims with Hartford Jr. On September 16, 2014, the bankruptcy court entered an agreed order granting the Trustee's motion and approving the settlement, subject to the Bank's claims.

The Bank filed its objection to the motion to approve settlement on September 24, 2014, arguing that it had capacity to bring the state court fraudulent transfer lawsuit due to the bankruptcy court's modification of the automatic stay and that it held a superior, first priority security interest in the settlement proceeds (the transferred checks). Following the Trustee's response, the bankruptcy court held a hearing on the Bank's objection on October 28, 2014.

At the hearing, the bankruptcy court, in addressing the order granting relief from the automatic stay, stated "[n]othing in the bank's motion identified the collateral to which the bank was referring in its motion, nor did the bank ever give notice that it would be seeking to file a state court fraudulent conveyance action against the debtor." The court, applying this court's decisions in *National Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705 (7th Cir. 1994) and *In re Xonics Photochemical, Inc.*, 841 F.2d 198 (7th Cir. 1988), rejected the Bank's argument that the order granting relief from the automatic stay allowed it to pursue the fraudulent transfer action in state court. The bankruptcy court stated:

> Therefore, absent the trustee's abandonment of its action or the Court's order granting derivative standing to a third party to bring the actions, only the trustee has the right to pursue fraudulent conveyance avoidance or recovery actions on behalf of the estate.
>
> ****
>
> In moving to vacate the automatic stay, Schaumburg Bank gave no indication or notice to the Court, the trustee or any creditor that it

was seeking either of those remedies. Such no-
tice would have been essential to satisfy the re-
quirements of due process, particularly in a
situation such as this one, where an order per-
mitting a secured creditor to pursue avoidance
actions on its own behalf would place the se-
cured creditor in direct conflict with the trustee
who has the right and perhaps the duty to pur-
sue the same cause of action on behalf of the
entire estate. The Seventh Circuit precedent
cited previously underscores that that would
be an impermissible result where the trustee
has not abandoned the cause of action.

Resolution of the claim assignment argument still left
open the issue of whether the Bank's security interest on its
own behalf as a secured creditor trumped the Trustee's in-
terest on behalf of the estate. Applying section 9-315(a)(2) of
the Illinois Uniform Commercial Code, the court found that
once the transferred checks cleared, the proceeds of the
checks were commingled with other cash in Hartford Jr.'s
account, so that the Bank's security interest would continue
in the cash proceeds from the two deposited and cleared
checks only to the extent that they remained identifiable. It
was the burden of the Bank to prove that it could identify
the claimed proceeds through tracing, and the Bank, up to
that point, had not offered any evidence to support its claim
that the proceeds remained identifiable. The Bankruptcy
Court concluded:

If Schaumburg Bank believes that it is capable
of establishing through tracing that the pro-
ceeds remain identifiable, then the Court will

> allow it the chance to do so through an eviden-
> tiary hearing. However, as Schaumburg Bank
> concedes, if it cannot meet its burden of tracing
> the settlement proceeds, then the Court will
> conclude it has not met its burden of proof and
> will overrule Schaumburg Bank's objection in
> its entirety.
>
> That's my ruling[.]

The court then inquired of counsel about how the parties intended to proceed on establishing the traceability of the check proceeds in Hartford Jr.'s account. The court noted that the account's balance may have gone up or down after the checks were deposited, which, after application of the lowest intermediate balance rule, "would seem to place a limit on what the bank could recover because anything that came in after that would be attributable to cash other than the proceeds that came from the settlement checks." The parties agreed that, based on the lowest intermediate balance rule, the most the Bank could possibly recover would be $3,300, and the Bank's counsel stated that the Bank would not pursue an evidentiary hearing for such a minimal amount. After some more equivocating from the parties on how they wished to proceed concerning the proceeds from the checks, the bankruptcy court stated:

> Let's do this. Before I clog up my docket with a
> trial date, let's continue this for a couple of
> weeks so you can check with your client and
> see how they want to proceed.
>
> I think under my ruling it's clear the best the
> bank could hope for would be $3,000, but–and

the trustee is going to insist on the bank carrying forward with its burden, which would require you to introduce whatever happened to it after that.

So why don't we–we'll set it for status. Why don't you guys come back and tell me how you want to proceed at that point?

The parties agreed and asked the court if they would receive a draft order to follow, and the court stated "[w]e'll prepare it."

The Bankruptcy Court entered an order on October 30, 2014, stating:

> For the reasons set forth in the record, the Court overrules the objections of Schaumburg Bank & Trust Company, N.A. to the Trustee's Motion to Approve Settlement with Thomas Hartford, Jr.

> This matter is continued for status to November 18, 2014 at 10:30 a.m. in courtroom 619, 219 South Dearborn Street, Chicago, Illinois 60604.

On November 13, 2014, the Bank filed its notice of appeal to the district court, stating that it was appealing from the Bankruptcy Court's order entered October 30, 2014, which overruled the Bank's objection to the settlement.

*The District Court Appeal*

The Bank's appeal was docketed in the district court on December 16, 2014. On March 26, 2015, the district court entered an order affirming the Bankruptcy Court. The Bank

filed its notice of appeal to this court on April 24, 2015. On May 1, 2015, the Bank filed its docketing statement, indicating this court had jurisdiction to entertain its appeal pursuant to 28 U.S.C. §158(d)(1).

## II.

Before addressing the parties' arguments on the merits, we must determine if this court has appellate jurisdiction over this appeal. "'Jurisdictional questions are pervasive in bankruptcy cases because of the tension between the 'finality' rule of §158(d) and the facts that each bankruptcy proceeding contains many claims and problems, each of which may come to a final conclusion before the estate has been wrapped up.'" *In re Bulk Petroleum*, 796 F.3d 667, 670 (7th Cir. 2015), quoting *In re Morse Electric Co.*, 805 F.2d 262, 264 (7th Cir. 1986). Neither party has contested jurisdiction at this stage, but this court has an independent duty to ensure that we have jurisdiction. *Bulk Petroleum*, 796 F.3d at 671.

The current bankruptcy appeals statute authorizes appeals as of right not only from final judgments in cases, but from "'final judgments, orders, and decrees … in cases and proceedings.'" *Bullard v. Blue Hills Bank*, —U.S. —, 135 S. Ct. 1686, 1692, 191 L.Ed.2d 621 (2015), quoting 28 U.S.C. §158(a). Both parties' jurisdictional statements claim jurisdiction under 28 U.S.C. § 158(d)(1). Section 158(d)(1) "gives us jurisdiction over appeals 'from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of [§158].'" *In re McKinney*, 610 F.3d 399, 401 (7th Cir. 2010), quoting 28 U.S.C. §158(d)(1). We only have jurisdiction over a bankruptcy appeal if both the bankruptcy court's order and the district court's order reviewing the original order are final decisions. *Zedan v. Habash*, 529 F.3d 398, 402 (7th Cir.

2008). This appeal was taken from the district court, which claimed jurisdiction under subsection (a) as an appeal from the final judgment of the bankruptcy court, so, our jurisdiction depends on whether what the district court heard was an appeal from a final judgment or order of the bankruptcy court. See *McKinney*, 610 F.3d at 401.

Finality in a bankruptcy appeal is considerably more flexible than in an ordinary civil appeal taken under 28 U.S.C. §1291 and, in the bankruptcy context, does not require the termination of the entire bankruptcy proceeding. *Bullard*, — U.S. —, 135 S. Ct. at 1691–92; *Zedan*, 529 F.3d at 402. The concept of "flexible finality" in bankruptcy "is based both on the traditional approach to bankruptcy proceedings and the common sense understanding that the breadth of bankruptcy cases necessitates an approach that allows for the efficient resolution of certain discrete disputes that may arise in a given bankruptcy." *McKinney*, 610 F.3d at 402.

In determining finality, we look to see if the bankruptcy and district courts' decisions finally disposed of a discrete dispute within the larger case. *Bullard*, — U.S. —, 135 S. Ct. at 1692; *Bulk Petroleum*, 796 F.3d at 671. A decision that merely resolves a "contested matter"[1] that arises during a bankruptcy case is not necessarily final, because "the list of contested matters is 'endless' and covers all sorts of minor disagreements." *Bullard*, – U.S. —, 135 S. Ct. at 1694, quoting 10

---

[1] Generally, disputes in bankruptcy are classified "as either 'adversary proceedings,' which are essentially full civil lawsuits carried out under the umbrella of the bankruptcy case, or 'contested matters,' an unrefined catchall for other issues the parties dispute." *Bullard*, — U.S. —, 135 S.Ct. at 1694. The Bank's objection to the bankruptcy court's approval of the settlement falls under the "contested matters" category.

Collier on Bankruptcy ¶ 9014.01, at 9014-3 (16th ed. 2014).
"The concept of finality cannot stretch to cover, for example,
an order resolving a disputed request for extension of time."
*Bullard*, — U.S. —, 135 S. Ct. at 1694. Therefore, "[w]hen we
talk about finality in bankruptcy we talk about proceedings
resolving disputes, not issues" because "'[a] decision or or-
der that resolves only an issue that arises during the admin-
istration of a bankruptcy estate is too small a litigation unit
to justify treatment as a final judgment.'" *McKinney*, 610 F.3d
at 404, quoting *In re Comdisco*, 538 F.3d 647, 651 (7th Cir.
2008). Thus, the question for this court then becomes what is
a discrete dispute, and how does it differ from a merely
"discrete issue" within the dispute? *Comdisco*, 538 F.3d at
651.

The test that has been endorsed by the Supreme Court,
and utilized by this court, to determine finality under
§158(d) is the "stand-alone test," which asks whether an or-
der resolves a discrete dispute that, but for the continuing
bankruptcy, would have been a stand-alone suit by or
against the trustee. See *Bullard*, – U.S. —, 135 S. Ct. at 1692;
*Zedan*, 529 F.3d at 402. However, the stand-alone test "leaves
room for enough interpretation to make the 'illustrative list
of orders that are either found to be final for purposes of ap-
peal under §158(d) or that are not considered final … dis-
mayingly long and inconsistent.'" *McKinney*, 610 F.3d at 402,
quoting *Comdisco*, 538 F.3d at 651 (citing to 16 Charles Alan
Wright, Arthur R. Miller & Edward H. Cooper, *Federal Prac-
tice and Procedure* §3926.2, at 298–324 (2d ed. 1996)). To be
"final," the order, judgment, or decree in question must con-
clusively determine a separable dispute over a creditor's
claim or priority. See *Bullard*, — U.S. —, 135 S. Ct. at 1692;
*Comdisco*, 538 F.3d at 651, citing *In re Saco Local Dev. Corp.*,

711 F.2d 441, 445–46 (1st Cir. 1983). An order, even if not literally final, is appealable to this court if all that remains to be done on remand to make it final is a "ministerial" ruling by the lower court, *i.e.* a ruling unlikely to give rise to a controversy that would trigger a further appeal, such as calculating prejudgment interest when the amount of the judgment, the interest rate, and the period over which the interest is to be calculated are all uncontested. *In re XMH Corp.*, 647 F.3d 690, 693–94 (7th Cir. 2011).

The question before us is whether the approval of a particular settlement is a "stand-alone dispute" that would be its own case outside of the bankruptcy. *Bullard*, — U.S. —, 135 S.Ct. at 1692. We find the answer, in this matter, to be no. We first note that Debtor's bankruptcy case is still ongoing, and the bankruptcy court's order does not say how much of the estate the Bank, or any other creditor, ultimately receives. The bankruptcy court's written order only approved the settlement, nothing else. The question of who gets what part of the settlement or any other asset appears, based on the record before us, to be unresolved in the bankruptcy court.

At oral argument the Bank argued that its attempt to pursue the transferred checks via a state court fraudulent transfer action and its assertion that its security interest in the checks trumped the estate's interest constituted a "discrete dispute." We find, however, that, in the context of this bankruptcy, those matters constitute a "discrete issue" of the larger "discrete dispute." The actual "discrete dispute" is how much of the estate the Bank, as valid first priority-secured creditor, receives, and, clearly, that dispute is very much undecided. How can this order be final when the

bankruptcy court, putting aside not having wrapped up the entire estate, has not yet even wrapped up the Bank's claim? As noted at oral argument, we do not know what exactly the Bank is getting out of the bankruptcy, and, for all this court can ascertain from the bankruptcy court's order, the Bank could still receive every penny of Debtor's estate. The bankruptcy court noted, at the October 28, 2014, hearing, that the Bank holds a "valid first priority security interest in virtually all of the [D]ebtor's assets[.]" Through the settlement, the Trustee has recouped the full amount of the transferred checks. The estate's assets could still go toward satisfying the Bank's claims, although not in the direct manner attempted by the Bank via the fraudulent transfer claim. Nonetheless, the issue is still very much in doubt in the bankruptcy court, and the Bank could still receive all or some of the money recouped by the Trustee. The bankruptcy court's order merely addressed a "discrete issue" within the larger "discrete dispute,"and thus is too small a litigation unit to justify treatment as a final judgment. See *Bullard*, — U.S. —, 135 S.Ct. at 1692; *Bulk Petroleum*, 796 F.3d at 671; *McKinney*, 610 F.3d at 651.

Even were the court to accept the Bank's argument that the issue addressed by the bankruptcy court's October 30, 2014, order constituted its own "discrete dispute," we find that the bankruptcy court's order was not "final" for purposes of appellate jurisdiction. The Bank argues the order determined the Bank's security interest in the transferred checks. This is not correct. The order approved the settlement, but was silent as to the security interest. The Bank argues we must look to the reasons stated on the record at the October 28, 2014, hearing, referenced in the October 30, 2014, order, to get a full understanding of the bankruptcy court's

order. The bankruptcy court stated, on the record, that it was continuing the matter for a status on November 18, 2014, for the parties "to come back and tell [the court] how you want to proceed at that point[.]" The notice of appeal to the district court was filed by the Bank on November 13, 2014, five days before the status conference to discuss how the parties wished to proceed on the matter of tracing the proceeds of the transferred checks. The bankruptcy court's ruling foreclosed one manner in which the Bank could pursue the transferred checks, but did not resolve the ultimate question of the Bank's claims to Debtor's assets, or even the particular accounts receivables assets at issue. There is a fundamental difference as to what is said by a judge on the record versus what the judge actually decides. No matter what occurred in this litigation with regard to statements made by the bankruptcy court on the record, the only matter decided by the bankruptcy court was that the settlement was approved, the Bank's objection was overruled, and the court was going to hold a separate hearing at a later date on what the Bank would receive. Before that hearing was held, the Bank filed this appeal. Therefore, even if this court were to find that the narrow matters addressed in the October 30, 2014, order constituted a stand-alone "discrete dispute," the order entered by the bankruptcy court was by no means final.

## III.

We find that the resolution of these matters settled a "discrete issue" within a "discrete dispute," rather than a "discrete dispute" itself, and such an order is not final for purposes of appellate jurisdiction in a bankruptcy case. See *Bullard*, — U.S. —, 135 S.Ct. at 1692; see also *Comdisco*, 538 F.3d at 651-52. This is not an order resolving an adversary

proceeding or confirming a Chapter 13 debtor's repayment plan. Such an order would be final. *Bullard*, — U.S. —, 135 S.Ct. at 1694. Rather, the Bank has objected to the Trustee's request that the bankruptcy court approve the settlement with Hartford Jr., and "[a] decision rebuffing one objection to another litigant's request is not 'final' in the sense that matters for appellate review." *Zedan*, 529 F.3d at 407 (Easterbrook, C.J., concurring). While the issue that the Bank cares about may have been resolved, its basic dispute with the bankrupt estate has not been resolved and therefore the judgment below is not final. See *McKinney*, 610 F.3d at 404. Further, even if the we accepted the argument that the bankruptcy court ruled on a "discrete dispute," the order entered was not a final order for purposes of appellate jurisdiction under §158(d).

The appeal is DISMISSED for want of jurisdiction.