In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 15-3237

JOHN GERMERAAD,

*Trustee-Appellant*,

*v.*

MYRICK POWERS AND ELVIE
OWENS-POWERS,

*Debtors-Appellees*.

———————

Appeal from the United States District Court for the
Central District of Illinois.
No. 14-CV-03128 — **Sue E. Myerscough**, *Judge*.

———————

ARGUED APRIL 11, 2016 — DECIDED JUNE 23, 2016

———————

Before BAUER and WILLIAMS, *Circuit Judges*, and ADELMAN,
*District Judge*.[*]

ADELMAN, *District Judge*. Myrick Powers and Elvie Owens-
Powers filed a petition under Chapter 13 of the Bankruptcy
Code. After the bankruptcy court confirmed their plan, the

———————

[*] Of the Eastern District of Wisconsin, sitting by designation.

Chapter 13 trustee filed a motion to modify the plan to in-crease the debtors' payments to the general unsecured credi-tors. The trustee's motion was based on an increase in the debtors' income, which, the trustee argued, resulted in their ability to pay more to their creditors under the plan. The bankruptcy court denied the motion. The trustee appealed to the district court, which affirmed. The trustee then filed this appeal. We vacate the judgment of the district court and re-mand for further proceedings.

## I.

The debtors filed their Chapter 13 petition on May 24, 2010. The bankruptcy court confirmed their plan on March 1, 2011. Under the plan, the debtors were to pay $660 per month to the Chapter 13 trustee for seven months, and then $758 per month for fifty-three months. The latter payment was later re-duced to $670 per month. From these payments, the trustee would pay the claims of secured creditors and distribute ap-proximately $22,000 to the general unsecured creditors.

In 2013, the trustee received the debtors' income tax return for 2012. According to the trustee, the return showed that the debtors' income had increased by $50,000 since 2011. Based on this increase in income, the trustee concluded that the debtors could afford a higher monthly payment for the re-maining months of their plan. The trustee filed a motion to modify the debtors' plan under 11 U.S.C. § 1329, which per-mits postconfirmation modification of a Chapter 13 plan. The trustee proposed to increase the debtors' monthly payments from $670 per month to $1,416 per month for the twenty-three months that remained under the plan at the time the motion was filed. If the debtors made these increased payments, the

trustee could (after a reduction for the trustee's commission) distribute an additional $15,000 to the unsecured creditors.

The debtors filed an objection to the trustee's motion to modify. They argued that the Bankruptcy Code did not permit modification of a Chapter 13 plan based on a postconfirmation increase in a debtor's income. They also argued that, even if the Code did permit modification on this ground, the facts of the case did not warrant modification because, although their income had increased, so had their expenses. After the debtors filed their objection, the trustee took discovery relating to the debtors' finances. Once this discovery was completed, the parties stipulated to certain facts.

The bankruptcy court decided the trustee's motion to modify based on the parties' briefs and their stipulation of facts. *See In re Powers*, 507 B.R. 262 (Bankr. C.D. Ill. 2014). The court denied the motion for two independent reasons. First, the court held that, as a matter of law, the Bankruptcy Code did not contain a provision that would allow modification of a Chapter 13 plan for the reasons cited by the trustee. *Id.* at 267–74. Second, the court found that, even if the court had the power to modify the plan for the reasons cited by the trustee, the facts of the case did not support the trustee's request. *Id.* at 274–75.

The trustee appealed the bankruptcy court's decision to the district court. The district court exercised jurisdiction over the appeal under 28 U.S.C. § 158(a)(1). On appeal, the trustee challenged both of the bankruptcy court's reasons for denying the motion to modify. First, the trustee argued that the bankruptcy court had erred as a matter of law when it concluded that the Bankruptcy Code did not permit modification based on a postconfirmation increase in a debtor's income. Second,

the trustee argued that the bankruptcy court's alternative reason for denying the motion was based on clearly erroneous factual findings and also involved an abuse of discretion. The district court addressed only the first argument. It concluded that the bankruptcy court did not err as a matter of law when it found that it lacked authority to grant the trustee's motion. Noting that this conclusion was sufficient to resolve the appeal, the district court declined to consider whether the bankruptcy court clearly erred or abused its discretion in finding that the facts of the case did not support the trustee's motion.

In his appeal to this court, the trustee argues that both the district court and the bankruptcy court erred in concluding that the Bankruptcy Code does not permit a trustee to request modification of a plan based on a postconfirmation increase in a debtor's income. The trustee asks that, if we accept his argument, we remand the case to the district court so that it may consider his arguments relating to the bankruptcy court's alternative ground for denying the motion.

Elvie Owens-Powers, who is the only debtor participating in this appeal,[1] contends that we lack jurisdiction to decide the appeal. She argues that the bankruptcy court's order denying the trustee's motion to modify the plan is not a final order for purposes of 28 U.S.C. § 158, and also that the case is moot. On the merits, she argues that the trustee has mischaracterized the bankruptcy court's reasons for denying his motion and that, under the proper characterization, the court's order must be affirmed.

---

[1] Myrick Powers has not filed a brief in this appeal and did not participate in oral argument.

## II.

We begin by addressing the debtor's arguments concerning our jurisdiction.

## A.

First, the debtor contends that a bankruptcy court's order denying a motion to modify a Chapter 13 plan is not "final" within the meaning of 28 U.S.C. § 158. Under that statute, we generally have jurisdiction over a bankruptcy appeal only if both the bankruptcy court's order and the district court's order are final. *See* 28 U.S.C. § 158(d)(1); *Schaumburg Bank & Trust Co., N.A. v. Alsterda*, 815 F.3d 306, 312 (7th Cir. 2016). In the bankruptcy context, "finality" is understood somewhat differently than it is in the context of ordinary civil litigation. *See, e.g., Bullard v. Blue Hills Bank*, __ U.S. __, __, 135 S. Ct. 1686, 1692 (2015). A bankruptcy case involves an aggregation of individual controversies, many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor. *Id.* An order in a bankruptcy case is considered final when it resolves one of the individual controversies that might exist as a stand-alone suit outside of bankruptcy. *See Schaumberg Bank & Trust*, 815 F.3d at 312–13. One way of assessing whether this standard has been met is to identify whether the order at issue brought to an end a single "proceeding" that exists within the larger bankruptcy case. *See Bullard*, 135 S. Ct. at 1692 (emphasizing that 28 U.S.C. § 158(a) allows appeals as of right from final orders in "cases and proceedings").

In the present case, Owens-Powers argues that a bankruptcy court's denial of a trustee's motion to modify a Chapter 13 plan does not resolve a "proceeding" within the larger bankruptcy case. She relies on the Supreme Court's decision

in *Bullard*, in which the Court held that an order denying con-
firmation of a Chapter 13 plan is not final unless the bank-
ruptcy court also dismisses the underlying bankruptcy case.
*Id.* at 1692–93. The Court reasoned that, in the context of the
consideration of Chapter 13 plans, the relevant "proceeding,"
for purposes of § 158(a), is the entire process of considering
plans, which terminates only when a plan is confirmed or—if
the debtor fails to offer any confirmable plan—when the case
is dismissed. *Id.* at 1692.

Owens-Powers contends that, in the context of a trustee's
motion to modify a confirmed plan, the relevant "proceed-
ing" encompasses more than simply the bankruptcy court's
denial of the motion. She notes that a ruling on one motion to
modify does not preclude the trustee from filing another mo-
tion to modify. Thus, argues the debtor, just like an order
denying plan confirmation is not final, an order denying a
trustee's motion to modify a confirmed plan is not final.

We do not find the debtor's analogy to *Bullard* persuasive.
The denial of a trustee's motion to modify is generally not part
of a larger "proceeding" that will conclude only when some
event other than the denial of the motion occurs. Rather, the
denial of the motion will generally resolve a discrete dispute
within the larger bankruptcy case, *i.e.*, whether the debtor's
plan may be modified for the reasons the trustee cites. If the
trustee loses the motion on the merits, rather than because the
motion contained a technical defect that could be cured, the
bankruptcy court will not invite the trustee to bring a subse-
quent motion seeking plan modification on the same grounds.
In contrast, when a bankruptcy court refuses to confirm a plan
but does not also dismiss the case, the debtor is usually given
an opportunity to submit a revised plan. *Bullard*, 135 S. Ct. at

1690. This is why the Court found that the relevant "proceeding" for purposes of plan confirmation encompasses more than the denial of any single proposed plan. That proceeding concludes only when either a plan is confirmed or the bankruptcy case is dismissed.

Of course, if the bankruptcy court does deny a trustee's motion to modify a plan based on a technical defect or on some other basis that could be cured by an amended motion, then the bankruptcy court's order will not be final. In this situation, the bankruptcy court's order will not have resolved a discrete dispute but will have been merely one step in a larger proceeding that will conclude when the bankruptcy court decides the amended motion. However, from the fact that some orders denying motions to modify plans are not final, it does not follow that none of them are final. In this regard, an order denying a motion to modify is analogous to an order granting a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6). If the district court grants the motion but does so based on a defect in the complaint that cannot be cured, then the order is final. *See Strong v. David*, 297 F.3d 646, 648 (7th Cir. 2002). However, if the district court grants the motion based on a technical defect that the plaintiff could cure by filing an amended complaint, then the order generally will not be final. *Id.* In the present case, the bankruptcy court did not deny the trustee's motion to modify based on a technical defect that the trustee could have cured by filing an amended motion that sought the same relief. Rather, the bankruptcy concluded as a matter of law that the Bankruptcy Code did not allow the requested modification.

The debtor notes that although the trustee could not have filed a second motion to modify requesting the same relief,

the trustee could have filed "a different motion"—one that "ask[ed] for a different change in the debtor's plan or [was] based on a different financial situation." Initially, we observe that the debtor has not identified any grounds on which the trustee could have filed a different motion to modify the plan in this case, and thus we cannot agree that in fact the trustee could have filed such a motion. However, we do not doubt that in some Chapter 13 cases, a trustee will file more than one motion to modify a confirmed plan. But this does not mean that in every case there is some larger "proceeding" relating to the trustee's motions to modify that does not come to an end until it is legally impossible for the trustee to file any further motions. Rather, where an order denying a motion to modify precludes the trustee from filing a subsequent motion based on the same grounds (*i.e.*, based on the same facts and legal principles), that order will be final even though the trustee could file a subsequent motion to modify based on different grounds, should those grounds materialize. In such a case, the bankruptcy court's resolution of the first motion to modify will have resolved a freestanding dispute within the larger bankruptcy case and be final for that reason.

Here, we may analogize the denial of a trustee's motion to modify to a denial of a Rule 60(b) motion for relief from a judgment entered in an ordinary civil case. *See* Fed. R. Civ. P. 60(b). That rule provides several grounds for relieving a party from the judgment. A court's denying a party's motion for relief on one ground, such as that the judgment was procured by fraud, *see* Fed. R. Civ. P. 60(b)(3), will not preclude the party from later filing a second motion based on a different ground, such as the discovery of new evidence, *see* Fed. R. Civ. P. 60(b)(2), should that ground materialize. Yet, even though it is theoretically possible that more than one Rule 60(b) motion

will be filed in a single civil case, a district court's order denying any one motion will be considered final and immediately appealable. *See, e.g.*, *Madej v. Briley*, 371 F.3d 898, 899 (7th Cir. 2004). The same result applies to a trustee's motion to modify a Chapter 13 plan.

For these reasons, we conclude that the bankruptcy court's order denying the trustee's motion to modify the plan was "final" within the meaning of § 158(a)(1). Because the district court's order was also final, we have jurisdiction over this appeal under § 158(d)(1).

**B.**

The debtor next contends that this appeal is moot. Article III of the Constitution limits the federal judicial power to actual, ongoing cases or controversies, a limitation understood to require a live dispute involving a party with "an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Redmond v. Redmond*, 724 F.3d 729, 735 (7th Cir. 2013) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). The case-or-controversy requirement "subsists through all stages of federal judicial proceedings, trial and appellate." *Id.* (quoting *Lewis*). If on appeal it becomes "impossible for a court to grant any effectual relief whatever," the case becomes moot and jurisdiction no longer exists. *Id.* (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, __ U.S. __, 132 S. Ct. 2277, 2287 (2012)).

In the present case, Owens-Powers argues that it is no longer possible to grant the relief the trustee requests—modification of the plan—because five years have elapsed since the debtors began making payments under their original plan. This argument is based on 11 U.S.C. § 1329(c), which

provides, in relevant part, that a plan may not be modified such that it "provide[s] for" the debtor to make plan payments over a period that expires more than five years from the date on which the first payment under the original confirmed plan was due. The first payment under the Powers' original confirmed plan was due in June 2010. Thus, Owens-Powers argues, it is no longer possible to modify the plan.

The debtor's argument rests on the assumption that if the trustee's request to modify the plan were allowed today, the result would be a plan that provides for the debtors to make payments over a period that expires after June 2015. That assumption is incorrect. If we vacated the bankruptcy court's disallowance of the trustee's proposed modification, then by operation of 11 U.S.C. § 1329(b)(2), the trustee's modified plan would "become[] the plan." The modified plan would then "provide" that the debtors must make increased payments to the trustee each month for the twenty-three months that remained under the plan at the time the motion was filed, *i.e.*, months 38 through 60. These months were within the permissible five-year period specified in § 1329(c). The modified plan would thus not "provide for" payments beyond five years.

It is true that months 38 through 60 have come and gone without the debtors making the increased payments. However, this does not mean that allowing the modification would have no effect on the parties' rights. Rather, if the modification were allowed, the debtors would be deemed in default because they failed to make all payments called for by their modified plan. If the debtors were in default, then several things of consequence could occur: the bankruptcy court could deny the debtors a discharge, dismiss their bankruptcy case, or convert the case to Chapter 7. *See* 11 U.S.C.

§§ 1307(c)(6), 1328.[2] Or, the bankruptcy court might allow the debtors to cure their default by paying the difference between the payments called for by the modified plan for months 38 to 60 and what they actually paid during those months. Although these payments would be made outside of the five-year period specified in § 1329(c), they would not be payments "provide[d] for" by the modified plan; rather, they would be payments made to cure a default under the modified plan, *i.e.*, payments made because the debtors did not make the payments "provide[d] for" by the plan in the first place. *See* 1 Hon. W. Homer Drake, Jr., et al., *Chapter 13 Practice and Procedure*, § 11:15 at 1131 (2d ed. 2015) ("[W]hen a debtor is close to completing her plan payments and needs a reasonable additional time to do so, courts have permitted the debtor to cure the defaults and consummate the plan. The reasoning is that the five-year restriction applies to the scheduling of the payments in the confirmed plan and does not prohibit cure of those payments outside the scheduled time … ."). In any event, even if the bankruptcy court could not allow the debtors to cure their default because of the five-year restriction, this appeal would still present a live dispute because the bankruptcy court has the power to deem the debtors in default, deny them a discharge, and dismiss or convert their Chapter 13 case.

The debtors might argue that it would be inequitable for the bankruptcy court to modify the plan or deny them a discharge after they have already made the payments provided

---

[2] At oral argument, the parties informed us that the bankruptcy court has not granted the debtors a discharge. We express no view on whether this appeal would be moot if the debtors had received a discharge.

for by the original plan. However, whether it would be inequitable to do any of these things is not a question that is relevant to mootness. As we have previously held, so long as a court retains the "raw ability" to take some action that will have a concrete effect on the parties' rights, the case is not moot even if the court would be reluctant to take that action. *In re UNR Indus., Inc.*, 20 F.3d 766, 768–69 (7th Cir. 1994); *accord United States v. Buchman*, 646 F.3d 409, 410–11 (7th Cir. 2011).

Next, the debtor contends that even if the five-year restriction does not result in mootness, the case is still moot because § 1329(a) states that a plan "may be modified," upon the request of the trustee (or the debtor or the holder of an allowed unsecured claim) only "before the completion of payments" under the original plan. The debtors note that they have completed making payments under their original plan. Therefore, they contend, the bankruptcy court no longer has the power to approve a modified plan.

However, § 1329(a) does not place any temporal limits on the bankruptcy court's power to approve a requested modification. Rather, the temporal limit applies to the party requesting modification, *i.e.*, to the debtor, the trustee, or an unsecured creditor. Although § 1329(a) states that the plan "may be modified" only within the prescribed time, when this language is read in the context of § 1329 as a whole, it is clear that it is referring to the time when the modification may be requested, not to the time within which the bankruptcy court may approve the modification. Specifically, § 1329(b)(2) states that "[t]he plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved." This provision means that the modification is effective, *i.e.*, that the plan is modified, on the date the party requests modification

of the plan, unless the court later disapproves it. *See* 2 Drake et al., *supra*, § 21:7 at 642. So, for example, if the debtors had completed making payments under their original plan between the date on which the trustee filed the modified plan and the date the bankruptcy court considered whether to approve the modification, the bankruptcy court would still have had the power to approve the modification, since by the time the debtors completed making the payments required by the original plan, the plan would have been modified to require increased payments. *Cf. In re Meza*, 467 F.3d 874, 879–80 (5th Cir. 2006) (holding that a bankruptcy court may consider a trustee's motion to modify a plan, if that motion was filed before the debtor completed payments under the original plan, even if the debtor completes making payments under the original plan before the bankruptcy court considers whether to approve the modification). Of course, in this case, the bankruptcy court disapproved the trustee's modification. Under § 1392(b)(2), the effect of the disapproval was to void the modification and reinstate the original plan. But this does not mean that the debtors' having completed payments under the original plan prevents reinstatement of the trustee's modified plan. Rather, if we were to vacate the bankruptcy court's order disapproving the modification, then by operation of § 1329(b)(2), the modified plan would be reinstated and deemed effective as of the date it was filed. It would be as if the bankruptcy court had never disapproved the modification in the first place. The modification thus would have occurred within the time period specified in § 1329(a).

For these reasons, we conclude that this appeal is not moot.

### III.

On the merits, the parties' principal disagreement concerns the legal standard that governs a bankruptcy court's exercise of its discretion in deciding a trustee's motion to modify a confirmed plan based on a postconfirmation increase in the debtor's income. The trustee contends that a bankruptcy court has discretion to grant the motion where the trustee shows that, because of an increase in income, the debtor can afford to pay more to the unsecured creditors than the original plan requires. Owens-Powers contends that a modification based on increased income is allowed only if the trustee shows that "good faith," as that term is used in 11 U.S.C. § 1325(a)(3), requires the increase. In addition, the parties disagree about how to characterize the bankruptcy court's decision in this case. The trustee contends that the bankruptcy court held as a matter of law that it lacked authority to grant a motion to modify based on a postconfirmation increase in the debtor's income. Owens-Powers, who concedes that the bankruptcy court had authority to grant a motion to modify based on a postconfirmation increase in income, contends that what the bankruptcy court actually held was that the trustee had failed to prove that good faith required the increase. For the reasons explained below, we side with the trustee on both issues.

Section 1329 provides that:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments;

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or

(4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor … .

(b)(1)      Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

In short, § 1329 states that modification may be requested by either the debtor, the trustee, or the holder of an allowed unsecured claim.[3] It contains three general limits on the bankruptcy court's power to approve the request. First, modification is allowed only if it will modify the plan in one of the ways specified in § 1329(a)(1)–(4). Second, a modification must comport with the provisions of the Code listed in § 1329(b)(1). Finally, as we have already discussed in the context of mootness, a modification may not result in a plan providing for payments over a term that is longer than the period specified in § 1329(c), which in this case is five years.

In the present case, the trustee's proposed modification satisfies these basic requirements. The purpose of the modification is to increase payments to the unsecured creditors, and thus it is of a type specified in subsection (a)(1). The modification would not result in a plan that violates any of the provisions identified in subsection (b)(1). And, as we have already held, the modification would not result in a plan that provides for payments over a period that is longer than five years.

---

[3] Section 1329 was added to the Bankruptcy Code as part of the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (1980). As originally enacted, § 1329 did not identify the parties who could request modification, and it was interpreted as allowing only the debtor to do so. *See* 92 Stat. at 2651; *In re Fitak*, 92 B.R. 243, 248 (Bankr. S.D. Ohio 1988). However, the 1984 amendments to the Code added language stating that modification could be requested by the debtor, the trustee, or the holder of an allowed unsecured claim. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 319, 98 Stat. 333, 357 (1986).

Although § 1329 contains these three general limits on modification, it does not contain an explicit standard for determining when a modification that is within those limits should be approved. *See In re Witkowski*, 16 F.3d 739, 746 (7th Cir. 1994); *Barbosa v. Solomon*, 235 F.3d 31, 38 (1st Cir. 2000); *In re Arnold*, 869 F.2d 240, 241 (4th Cir. 1989); 1 Drake et al., *supra*, § 11:4 at 1083 (noting that "§ 1329 provides no standards to guide the court in the exercise of its discretion"). However, courts routinely deem modification appropriate when there has been a postconfirmation change in the debtor's financial circumstances that affects his or her ability to make plan payments. *See, e.g.*, *Barbosa*, 235 F.3d at 40 ("Congress saw fit to allow the trustee and holders of unsecured claims to seek an amendment to the confirmed plan in order to carry the ability-to-pay standard forward in time, allowing upward or downward adjustment of plan payments in response to changes in the debtor's financial circumstances which affect his/her ability to make payments"); *Arnold*, 869 F.2d at 241 ("Although § 1329(a) does not explicitly state what justifies such a modification, it is well-settled that a substantial change in the debtor's financial condition after confirmation may warrant a change in the level of payments."); *In re Powers*, 202 B.R. 618, 622 (B.A.P. 9th Cir. 1996) (noting that a "debtor's changed financial situation" is grounds for modifying a plan); 1 Drake et al., *supra*, § 11:12 at 1100–01 (collecting numerous cases supporting the proposition that "[c]ourts generally permit debtors to modify plans to reduce payments based on reduced income" and "generally require[] debtors whose income increases significantly after confirmation to pay more"). So, for example, if the debtor loses her job and can no longer afford the payments required under the original plan, then she may request modification to have the plan payments reduced.

Conversely, if the debtor's income increases such that she can afford to pay more to her creditors than required under the original plan, then the trustee or an unsecured creditor may request that plan payments be increased. Courts have reasoned that authority to allow such modifications is implied by the purposes of Chapter 13, which are to allow the debtor a fresh start where it is possible to do so without liquidating the debtor's assets (as in a Chapter 7 bankruptcy case), while at the same time ensuring that the debtor devotes all of her disposable income during the life of the plan to repaying creditors. 1 Drake, et al., *supra*, § 11:4 (quoting *In re Forte*, 341 B.R. 859, 869–70 (Bankr. N.D. Ill. 2005)). In addition, courts have noted that the legislative history relating to the 1984 amendments to the Bankruptcy Code—which amended § 1329(a) to permit trustees and unsecured creditors (and not just debtors) to request plan modification—supports the conclusion that plan modification is permitted when a change in the debtor's income makes increased payments affordable. *Barbosa*, 235 F.3d at 40–41 (citing *Personal Bankruptcy: Oversight Hearings Before the Subcomm. on Monopolies and Commercial Law of the H. Comm. on the Judiciary*, 97th Cong. 22–23 (1981–82)); *Arnold*, 869 F.2d at 241–42 (same).[4]

---

[4] While courts generally agree that a postconfirmation change in the debtor's ability to make plan payments is grounds for modifying a plan to either increase or decrease the debtor's payments, they have disagreed on whether there must be some threshold showing relating to the amount of change that has occurred since confirmation and whether that change was unanticipated at the time of confirmation. Specifically, some courts have held that modification is permitted only if there have been "unanticipated, substantial changes" in the debtor's financial circumstances since the time of confirmation. *See, e.g.*, *Arnold*, 869 F.2d at 243. However, in *Witkowski*,

In the present case, the trustee requested modification of the debtors' plan after he determined that the debtors' income had increased substantially since confirmation and, for that reason, they could afford to make higher plan payments. In his motion, the trustee cited various cases recognizing that the bankruptcy court has discretion to allow modification for this reason. The bankruptcy court, however, found that no "statutory authority" or "Code provision" supported the trustee's request. *Powers*, 507 B.R. at 270–71, 273–74. The court initially characterized the trustee's modification as a request "to recalculate disposable income" under the method specified in 11 U.S.C. § 1325(b). That subsection of the Code generally provides that a court may not confirm a plan, over the objection of the trustee or an unsecured creditor, unless under the plan the debtor will, during the applicable plan period, pay all of her projected disposable income—as calculated under the methods specified in that subsection—to the unsecured creditors. However, because § 1325(b) is not mentioned in § 1329(b)(1) as a section of the Code that "appl[ies]" to modification, many courts have concluded that the projected-disposable-income test of § 1325(b) does not apply to a proposed modification. *See, e.g.*, *In re Sunahara*, 326 B.R. 768, 781–82 (B.A.P. 9th Cir. 2005). Other courts have held that the test does apply. *See, e.g.*, *In re Cormier*, 478 B.R. 88, 94–97 (Bankr. D. Mass. 2012). The bankruptcy judge in the present case is in the former camp, and that is why she held that § 1325(b) does not provide authority to allow the trustee's modification. But the trustee has not at any stage of this case suggested that the modification was based on the disposable-income test of

---

we held that a substantial, unanticipated change in circumstances is not a prerequisite to modification. 16 F.3d at 742–46.

§ 1325(b). Instead, as noted, the trustee argues that the modification is supported by the cases holding that a plan may be modified where an increase in income means that the debtor can afford to make higher payments. Thus, in this appeal, we do not need to decide whether the bankruptcy court was correct in holding that § 1325(b) does not apply to modifications under § 1329.

After concluding that § 1325(b) was not a source of authority for the trustee's modification, the bankruptcy court found that no other Code provision supported the modification. *Powers*, 507 B.R. at 270–74. In this part of its opinion, the bankruptcy court characterized the trustee's modification request as being based "solely on the equities of the situation." *Id.* at 270. The court then rejected the idea that a modification could be based on equitable grounds rather than on an express provision of the Bankruptcy Code. *Id.* at 271 (stating that court could not "exercise its discretion to modify a confirmed Chapter 13 plan other than for the reasons or under the circumstances expressly provided for by statute"). Instead, the court reasoned, a motion to modify "must comply with and be supported by the Code provisions made applicable to modifications by § 1329(b)(1)." *Id.* at 274.

In rejecting the trustee's argument that the court had authority to allow a modification that was based "solely on the equities of the situation," the bankruptcy court seems to have rejected the cases, cited above, in which courts have recognized that modification under § 1329 is allowed when there has been a postconfirmation change in the debtor's financial circumstances that affects his or her ability to make plan payments. Indeed, the phrase "entirely on the equities of the situation" appears in one of those cases, *In re Than*, 215 B.R. 430,

438 (B.A.P. 9th Cir. 1997). In that case, the court stated that "Congress contemplated in enacting § 1329 a motion to modify the plan if the debtor's income increased so the court could consider all of the circumstances of a particular debtor to determine whether higher payments should be required." *Id.* The court then held: "When § 1325(b) [*i.e.,* the projected-disposable-income test] is inapplicable, the § 1329 analysis is based entirely on the equities of the situation." *Id.* In rejecting this line of authority, the bankruptcy court concluded that a modification is allowed only if it is "supported by" one of the Code provisions listed in § 1329(b)(1). *Powers*, 507 B.R. at 274.

On appeal, the district court held that, as a matter of law, the bankruptcy court was correct in concluding that the projected-disposable-income test of § 1325(b) did not apply to modification under § 1329. *In re Powers*, __ B.R. __, __, 2015 WL 5725701, at *2 (C.D. Ill. Sep. 30, 2015). However, as we have noted, the trustee did not argue that § 1325(b) applies to modification under § 1329. Instead, the trustee argued that even though § 1325(b) may not apply to modification, the bankruptcy court had the authority to modify the plan to increase the debtor's payments if a change in the debtor's financial circumstances enabled the debtor to pay more to her creditors. The district court acknowledged that the trustee had cited "several cases from outside of the Seventh Circuit in which courts have held that a confirmed Chapter 13 plan may be modified when the debtor experiences an increase in income." *Id.* at *3. But the court deemed those cases inconsistent with our opinion in *Witkowski*, which the court interpreted as meaning that modification is available only if it is based on one of the Code provisions listed in § 1329(b)(1). The court therefore concluded that the bankruptcy court lacked authority to allow the trustee's modification.

We conclude that both the district court and the bank-
ruptcy court erred in concluding that the Code does not au-
thorize the trustee's modification. First, *Witkowski* does not
hold that modification under § 1329 is allowed only if the
modification is supported by one of the Code provisions
listed in § 1329(b)(1). The sentence in *Witkowski* that the dis-
trict court cited to support its contrary conclusion is this: "A
modified      plan     is     also     only     available     if
§§ 1322(a), 1322(b), 1325(a) and 1323(c) of the bankruptcy
code are met." *Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994) (cit-
ing 11 U.S.C. § 1329(b)(1)). However, context makes clear that
this sentence means only that § 1329(b)(1) places certain limits
on plan modification. The sentence appears in our discussion
of the debtor's argument that the common-law doctrine of res
judicata prevents modification of a confirmed plan unless the
movant demonstrates a change of circumstances. *See id.* at
744–46. The debtor had argued that, unless res judicata ap-
plied in the modification context, bankruptcy courts would be
inundated with motions to modify. *Id.* at 745. In rejecting this
argument, we observed that "modifications under § 1329 are
not limitless." *Id.* It was then that we pointed out that some of
the limits on modification are found in the Code provisions
listed in § 1329(b)(1). *Id.* Importantly, we did not say that a
court could modify a plan only if the modification was based
on—rather than merely consistent with—one of those provi-
sions. Rather, after summarizing the limits on modification,
we recognized that § 1329 does not explicitly identify the cir-
cumstances under which modification is appropriate. *Id.* at
746 (citing *Arnold*, 869 F.2d at 241). We then held that "modi-
fication under § 1329 is discretionary," and concluded that the
bankruptcy court in that case did not abuse its discretion in
modifying a plan at the request of the trustee to increase the

payments made to the unsecured creditors. *Id.* We allowed this modification even though it was not based on any provision listed in § 1329(b)(1). Thus, *Witkowski* does not support the result reached by the district court and the bankruptcy court in this case.

Although it is true, as the bankruptcy court pointed out, that no provision of the Code expressly permits modification when a change in the debtor's financial circumstances makes an increase in payments affordable, it does not follow that modification for this reason is forbidden. Indeed, the Code does not contain *any* provision that expressly identifies the grounds on which a trustee or an unsecured creditor may modify a plan. *See* 1 Drake et al., *supra*, § 11:1 at 1072 (noting that "the standards for postconfirmation modification in Code § 1329 provide no guidance for determining what a trustee or unsecured creditor can require a debtor to do"). Because Congress did not provide express standards to govern modifications by trustees and unsecured creditors, it necessarily left the development of those standards to the courts. And, as we have explained, the courts have long recognized that a trustee or an unsecured creditor may seek modification when the debtor's financial circumstances change after confirmation and result in the debtor's having the ability to pay more. *See, e.g.*, *Barbosa*, 235 F.3d at 40; *Arnold*, 869 F.2d at 241; *Powers*, 202 B.R. at 622; 1 Drake et al., *supra*, § 11:12 at 1101 (collecting cases). Allowing the bankruptcy court, in its discretion, to approve modification for this reason is consistent with Chapter 13's policy of requiring debtors to repay creditors to the extent they are able, and it is also supported by the legislative history of the 1984 amendments to Chapter 13. *Barbosa*, 235 F.3d at 40–41; *Arnold*, 869 F.2d at 241–42. Thus, we

hold that a bankruptcy court may allow modification to in-
crease the debtor's payments if, in its discretion, it concludes
that a change in the debtor's financial circumstances makes an
increase in payments affordable.

In this court, Owens-Powers concedes that a bankruptcy
court has discretion to allow modification at the request of the
trustee or an unsecured creditor when the debtor experiences
an increase in income. However, the debtor contends that the
court may allow the modification only if the trustee shows
that "good faith … required the increase." This is a reference
to 11 U.S.C. § 1325(a)(3), which requires a plan to be "pro-
posed in good faith." The debtor further contends that the
bankruptcy court actually denied the trustee's motion on the
ground that he had not shown that good faith required the
increase. We do not find these contentions persuasive.

First, the debtor develops no legal argument in support of
her contention that a plan may be modified based on an in-
crease in income only when the modification is required by
good faith. Rather, the debtor merely asserts in her brief that
"increased income supports increased plan payments only in
the context of good faith." The debtor cites no cases that sup-
port this assertion, and she does not offer an interpretation of
the Code that supports it. Nor do we see how the Code could
be interpreted to allow modification based on an increase in
income only when good faith "requires" the modification. It
is true that the good-faith standard is incorporated into § 1329
because it is one of the "requirements of section 1325(a)" that
applies to any modification. *See* 11 U.S.C. § 1329(b)(1). But all
this means is that a party may not propose a plan in bad faith,
such as by "manipulation of code provisions." *Witkowski*, 16
F.3d at 746. Section 1325(a)(3) does not provide a standard for

determining when a modified plan that has been proposed in good faith should be approved.

Perhaps the debtor means to argue that a plan may be modified to increase payments only when modification is necessary to bring *the debtor* into compliance with the good-faith requirement. But § 1325(a)(3), by its terms, applies only to the proponent of a plan, which obviously will not be the debtor when the modification is requested by the trustee or an unsecured creditor. Although the debtor's good faith will have been at issue when the debtor proposed the original plan, and will be at issue when it is the debtor who requests modification under § 1329, the debtor's good faith is not at issue when the modification is proposed by the trustee or an unsecured creditor.

We also reject Owens-Powers's suggestion that the bankruptcy court actually denied the trustee's modification because he had failed to show that good faith required the increase in plan payments. Although the bankruptcy court referenced the good-faith standard three times in its opinion, two references were merely observations that the standard applies to modification under § 1329(b)(1). *See Powers*, 507 B.R. at 273, 274. In the third reference, the bankruptcy court stated that "[m]odification requests, whether made by a trustee or a debtor, must be proposed in good faith, and moving to modify to circumvent the original confirmation requirements may suggest bad faith." *Id.* at 272. Here, the court did not find that the trustee had, in fact, proposed the modified plan in bad faith. Rather, the court made this statement during the course of a larger discussion in which the court rejected the trustee's suggestion that modification could be based on equitable grounds rather than on an express Code

provision. *See id.* at 270–73. At no point did the court suggest that it would have approved the modification if the trustee had shown that good faith "required the increase," as the debtor suggests.

Finally, we discuss the bankruptcy court's alternative holding, which was that it would not allow the trustee's modification even if it had authority to consider whether equitable considerations required an increase in payments. *Powers*, 507 B.R. at 274–75, 276. In this part of its opinion, the bankruptcy court determined that the trustee had failed to show that the debtors' financial circumstances had changed such that it was now equitable to require higher payments. *Id.* On appeal to the district court, the trustee argued that this alternative holding was based on clearly erroneous factual findings, including mathematical errors, that caused the court to misunderstand the debtors' then-current financial circumstances. The trustee also argued that the bankruptcy court had abused its discretion by failing to consider all of the evidence in the record pertaining to this issue. However, the district court declined to review the bankruptcy court's alternative holding, reasoning that it was unnecessary to do so in light of its conclusion that the bankruptcy court's primary holding was correct.

Owens-Powers has not asked us to affirm the district court on the basis of the bankruptcy court's alternative holding. Nor has the trustee asked us to review that holding. Instead, the trustee asks that we remand the case to the district court so that it may review the holding in the first instance. Accordingly, we will not address the alternative holding but will remand the case to the district court.

## IV.

For the reasons stated, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.