**In the MATTER OF: Chris A. BROWN, Christine J. Brown, Debtors**

**CASE NO. 16-10216**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Signed August 2, 2016.

**706**

R. David Boyer II, Fort Wayne, IN, for Debtors.

## DECISION AND ORDER DENYING CONFIRMATION

Robert E. Grant, Chief Judge, United States Bankruptcy Court

On August 2, 2016.

■ A chapter 13 plan may not modify the rights of the holder of "a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). The debtors' proposed chapter 13 plan, as modified, contains the following provision:

> The failure of Citi Mortgage to file a proof of claim by the claims bar date shall result in the waiver of any secured mortgage arrearage, and any mortgage arrears being reduced to $0.00. Agreed Modification of Chapter 13 Plan, filed April 8, 2016, ¶ 1.[1]

1. The Chapter 13 trustee had objected to the debtors' original plan because it:

> propose[d] to cure and maintain a mortgage, with no claim filed to date. The Debtors' Plan does not contain language directing the mortgage company to file a claim by the bar date or otherwise waiving the mortgage arrears. Trustee would object to confirmation of a Plan that requires payment on a legally invalid claim as prejudicial to unsecured creditors. Trustee's Objection to Confirmation, filed Mar. 29, 2016, ¶ 2.

This objection prompted the debtors and the trustee to file the agreed modification. Yet, the debtor is to file a plan within 14 days after the petition, Fed. R. Bankr. P. Rule 3015(b), and the court is to hold the confirmation hearing no later than 45 days after the meeting of creditors, 11 U.S.C. § 1324 (b), while creditors have until 90 days after that meeting to file claims, Fed. R. Bankr. P. Rule 3002(c)—governmental units have even more time—so it is not surprising that a plan would be formulated and the confirmation hearing held before all claims are filed. Indeed, it is impossible to do otherwise and still comply with the required deadlines. As for the other aspects of the trustee's objection, in the Seventh Circuit, secured creditors are required to file a claim by the claims bar date whether the plan says so or not. In re Pajian, 785 F.3d 1161 (7th Cir. 2015). Furthermore, no distribution can be made to a creditor who does not have an allowed claim and to have an

The court has questioned whether a plan containing such a provision can be confirmed. Although the debtors acknowledge that this provision constitutes a modification of Citi Mortgage's rights, both the debtors and the trustee argue that, for various reasons, the plan is confirmable. That is the issue presently before the court.

■ To be worthy of confirmation the court must find that "the plan complies with the provisions of [chapter 13] and with the other applicable provisions of [title 11]." 11 U.S.C. § 1325 (a)(1). A plan that attempts to do what § .1322(b)(2) forbids does not satisfy this requirement.[2] Nonetheless, it is argued that the court should not consider the issue because Citi Mortgage was given a separate notice of what has been proposed, the modification was the subject of a separate hearing, to which Citi Mortgage was invited, and it did not appear or object. As the trustee phrases it, under these circumstances, "acquiescence has to be presumed."

As appealing as that argument might seem, and as much as the court might like to accept it, it cannot. It is diametrically opposed to the instructions the Supreme Court handed down in United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010). There, the Court took issue with the Ninth Circuit's comments that the bankruptcy court should confirm a plan with provisions that conflict with the Bankruptcy Code and Rules of Procedure unless the creditor affected raised a timely objection. Id., 559 U.S. at 276, 130 S.Ct. at 1380. Instead, the Court stated the failure to comply with those requirements "should prevent confirmation of the plan even if the creditor fails to object or to appear in the proceeding at all." Id. That is the situation here. The Court went on to observe: "Section 1325(a) ... requires bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue." Id., 559 U.S. at 277, 130 S.Ct. at 1381 n.14 (emphasis original). This court cannot "correct a defect in the proposed plan" unless it independently determines whether a plan containing such a provision satisfies the requirements of § 1325(a), even if no creditor appears or raises the issue. See, In re Carlton, 437 B.R. 412, 417 (Bankr. N.D. Ala. 2010) ("After Espinosa there can be no doubt about a bankruptcy court's authority and responsibility to deny confirmation of an offending plan although the creditor who would suffer the consequences of confirmation fails to object.")

■ The Supreme Court's instructions in Espinosa are not as unusual as some might believe. To the contrary, they are entirely consistent with the court's role in traditional civil litigation when a plaintiff seeks a default judgment after the defendant's failure to respond to a complaint against it. The defendant's default is not a confession of the plaintiff's right to the relief it seeks, but only an admission of the well pleaded allegations in the com-

---

allowed claim one must first file a proof of claim. Pajian, 785 F.3d at 1163; In re Baldridge, 232 B.R. 394, 396 (Bankr. N.D. Ind. 1999). See also, In re Greenig, 152 F.3d 631 (7th Cir. 1998) (confirmed plan providing that creditor had an allowed claim did not relieve creditor of the need to file a timely proof of claim).

**2.** While § 1322(b)(11) provides flexibility in the plan formulation process, by allowing the plan to contain "any other appropriate provision not inconsistent with [title 11]," it is not a license to override other provisions of the Bankruptcy Code. In re Mammel, 221 B.R. 238, 242 (Bankr. N.D. Iowa 1998). An additional provision that attempted to do so would be inconsistent the provisions of title 11. See, In re Madera, 445 B.R. 509, 520–21 (Bankr. D. S.C. 2011).

plaint. Even after the default, the court has the obligation satisfy itself that those allegations state a legally sufficient claim before judgment can be entered. See, Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975); Black v. Lane, 22 F.3d 1395, 1399 (7th Cir. 1994); United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989); Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc., 722 F.2d 1319, 1323 (7th Cir. 1983); Owens v. Layton, 1995 WL 803822 *4 (N.D. Ind. 1995). If they do not, the requested judgment should be denied. See, Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980); Lusby v. Hill, 2006 WL 3842196 (D. M.D. Fla. 2006); Owens, 1995 WL 803822 *4–5. That is all the court is doing here. Although Citi Mortgage has defaulted, by failing to object to confirmation, the court is asking whether the debtors' plan is legally sufficient: in other words whether it satisfies the legal requirements for confirmation. It is not questioning any of the facts upon which the plan is based, such as property valuations, interest rate, disposable income, or the other factual components of § 1325, but only asking whether the plan contains an "obvious defect" that prevents confirmation. In re Euliano, 442 B.R. 177, 184 n. 14 (Bankr. D. Mass. 2010) ("where the possible impediment to confirmation ... is not 'an obvious plan defect,' the onus is on interested parties ... to bring those issues to the court's attention.").[3] This plan does.

Since the confirmation hearing and while the issue before the court was being briefed, Citi Mortgage filed a timely proof of claim, four days before the claims bar date expired.[4] As a result, both the debtors and the trustee argue that the plan provision in question is no longer operative and so the question of its propriety is moot. It is not. It would be if, for example, the plan was withdrawn, leaving the court with nothing to decide. But that is not what the debtors want. They want the court to confirm this plan and to do so the court must find that it "complies with the provisions of [chapter 13] and with the other applicable provisions of [title 11]." 11 U.S.C. § 1325 (a)(1). That refers to the entire plan; not just bits and pieces of it. Since the court is still being asked to confirm the plan—and if it does not the debtors will be confronted with options as to what to do next, either a new plan or dismissal—they continue to have "a legally cognizable interest in the outcome" and the case is not moot. See, Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). That "raw ability" to take action that will have an effect on their rights means the case is not moot. See, Germeraad v. Powers, 826 F.3d 962, 967–69 (7th Cir. 2016) (expiration of maximum term for post confirmation plan modification and completion of payments did not moot appeal from order denying modification); Matter of UNR Industries, Inc., 20 F.3d 766, 768 (7th Cir. 1994).[5]

---

3. While a creditor may "accept" or "agree to" plan provisions that could not otherwise be imposed upon it, see e.g., 11 U.S.C. §§ 1322(a)(2), 1325(a)(5)(A), the failure to object is not acceptance. Madera, 445 B.R. at 513; In re Tonioli, 359 B.R. 814, 817 (Bankr. D. Utah 2007) ("general restrictions on chapter 13 plans ... cannot be overcome by silence"). See also, In re Northrup, 141 B.R. 171, 172–73 (D. N.D. Iowa 1991); In re Montoya, 341 B.R. 41, 45 (Bankr. D. Utah 2006); In re Smith, 212 B.R. 830 (Bankr. E.D. Vir.

1997). If it were, the Supreme Court's comments in Espinosa would be meaningless.

4. Debtors and the trustee specifically asked for a briefing schedule that extended beyond the deadline for filing claims.

5. Even if the issue might be considered moot, there is an exception to the doctrine where a matter is "capable of repetition, yet evading review." See, Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973);

 The primary argument advanced by the debtors and the trustee is that the provision in question is not a modification of Citi Mortgage's rights, but only a sanction for the failure to file a timely claim: the sanction being the loss of any arrears. In the court's opinion, this is nothing more than semantics. "Labels should not determine rights." Blau Plumbing, Inc. v. S.O.S. Fix-it, Inc., 781 F.2d 604, 608 (7th Cir. 1986). Placing a different label upon something does not change what it truly is. See, William Shakespeare, Romeo & Juliet, Act II, Scene II ("What's in a name? That which we call a rose by any other name would smell as sweet."). See also, National Federation of Independent Business v. Sebelius, ——— U.S. ———, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012) (what Congress called a "penalty" is a "tax"). Call it what you will, if the plan modifies Citi Mortgage's rights [6] it runs afoul of the prohibition of § 1322(b)(2) and § 1325(a)(1). In general terms, a plan modifies a residential mortgage holder's rights if it does anything other than maintain the regular payments while the case is pending and cure any default within a reasonable time. 11 U.S.C. § 1325(a)(5). It may not bifurcate the creditor's claim into secured and unsecured components, change the interest rate, amortization schedule, payment required or the amount due. See, Nobelman, 508 U.S. 324, 113 S.Ct. 2106; In re Litton, 330 F.3d 636, 643–44 (4th Cir. 2003); Anderson v. Hancock, 820 F.3d 670, 672 (4th Cir. 2016); In re Rogers, 500 B.R. 537, 540 (Bankr. W.D. Mich. 2013). Yet, changing the amount due Citi Mortgage is precisely what the plan proposes to do, by waiving any arrears and reducing them to nothing. See, In re Matteson, 535 B.R. 156, 162 n.6 (6th Cir. BAP 2015) (observing that a hypothetical plan provision reducing debt without payment may be unlawful).

The "permissible sanction and not a modification" argument is based upon the provisions of Rule 3001(c). That rule specifies the information a creditor must provide with its proof of claim and prohibits it from using any omitted information as evidence in the case, or allows the court to award other appropriate relief, including fees and expenses. Fed. R. Bankr. P. Rule 3001(c)(1), (2)(A-D). The argument is that mortgage creditors are required to provide information concerning any arrears and the amount needed to cure any default in their claims, and by not filing a timely proof of claim they fail to provide that information, justifying the sanction of Rule 3001(c)(2)(D). The proposed plan's waiver of any arrears and reducing it to nothing is characterized as essentially the same thing as prohibiting the lender from offering the omitted information as evidence in the proceeding.

 The argument suffers from at least two flaws. The first is that there is a significant distinction between what the Bankruptcy Rules may authorize, and the procedures they establish to get there, and achieving a similar result through the plan confirmation process. Cf., Espinosa, 130 S.Ct. at 1380–81 (plan providing for the discharge of student loans without an adversary proceeding should not be confirmed). The limitations on what the Rules

---

Kingdomware Technologies, Inc. v. United States, 579 U.S. ———, 136 S.Ct. 1969, 195 L.Ed.2d 334 (2016). Given the required sequence of events and the short deadlines involved, that could well apply here.

**6.** The trustee's brief repeatedly argues that the creditor's mortgage is not being modified.

See e.g., Trustee's Brief, filed July 1, 2016, pp. 5, 6, 8. Section 1322(b)(2) prohibits modification of the "rights" of a creditor whose only security is a lien upon the debtor's residence, not just its mortgage. Nobelman v. American Savings Bank, 508 U.S. 324, 327–28, 113 S.Ct. 2106, 2109–10, 124 L.Ed.2d 228 (1993).

may do are different from those placed upon a plan, see, 28 U.S.C. § 2075, and the Rules may well be able to do things a plan cannot. The Bankruptcy Code prohibits the plan from modifying the rights of a residential mortgage holder, except to the extent of curing any default. 11 U.S.C. § 1322(b)(2), (5). There is no unwritten or implied statutory license to modify such a creditor's rights in a way that might be "similar to" or "essentially the same as" other aspects of the Code or Rules of Procedure. If the court were to recognize such an exception, where would the opportunity to modify in an analogous manner end? Why not void the lien, discharge the claim, or even require the creditor to pay the debtor money? There is some kind of statutory or rules based analog for each of those actions. See e.g., 11 U.S.C. §§ 506(d), 1328(a); 28 U.S.C. § 1927; Fed R. Civ P. Rule 11. If analogous sanctions are impliedly permitted, why not make them available as well? "[T]his type of plan provision should be discouraged rather than encouraged under the guise of creativity." In re Mammel, 221 B.R. 238, 243 (Bankr. N.D. Iowa 1998).

 The second flaw the court perceives is that sanctions are usually reserved for punishing some type of misconduct: doing something that is not supposed to be done. No creditor, secured or otherwise, is ever required to file a claim. In re Simmons, 765 F.2d 547, 551 (5th Cir. 1985) citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 351 (1977), reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6307; S.Rep. No. 989, 95th Cong., 2d Sess. 61, reprinted in 1978 U.S. Code Cong. & Ad. News 5787,

5847; Matteson, 535 B.R. at 163; Baldridge, 232 B.R. at 396. They are free not to if that is their desire.[7] Debtor's plan attempts to transform an option into an obligation, which if not observed deprives the creditor of a portion of its claim and the opportunity to enforce the lien securing it. Cf., Pajian, 785 F.3d at 1163 (a secured creditor who fails to file a claim can still enforce its lien even after the debtor receives a discharge). The court cannot accept that it is proper for a plan to sanction a creditor for something it has every right not to do. Whatever consequences follow from a creditor's decision to or not to participate in a bankruptcy proceeding must be a function of the Bankruptcy Code and Rules of Procedure, not draftsmanship.

The court understands the situation that motivates the trustee to suggest and defend the plan provision in question, and it may even sympathize with her. The inability to get timely and accurate information concerning the amounts due residential mortgage holders, and their failure to file claims, creates major problems for the chapter 13 debtor. Debtors often resort to the chapter 13 process in order to save their homes and propose a plan designed to do so, by curing defaults and maintaining payments on those long-term debts. But that means the mortgage debt will not be discharged when the plan is completed, 11 U.S.C. § 1328(a)(1), and unless the required amounts due have been identified and paid, there is the risk debtors will emerge from the chapter 13 process only to face foreclosure because they are still in default.[8] That problem is exacerbated by

---

7. Since filing a claim is a prerequisite to receiving a distribution from the estate, Pajian, 785 F.3d at 1163, not doing so will have consequences. Baldridge, 232 B.R. at 396. The creditor will not receive payments on its claim and runs the risk that it might be dis-

charged. Nonetheless, those consequences come from the provisions of the Bankruptcy Code and associated Rules of Procedure, not the provisions of a debtor's plan.

8. Most of the recent changes to Rule 3001(c), as well as Rule 3002.1, attempt to address this

Pajian's requirement that secured creditors must file claims by the bar date. When they do not, the trustee is on the horns of a dilemma. She can object to the untimely claim, with the result that it will be disallowed and will not receive a distribution; but that defeats debtors' goal for the proceeding and will leave them with a non-dischargeable debt which is still in default when the plan is completed. Alternatively, she can overlook the untimeliness, letting the untimely claim stand as "deemed allowed," 11 U.S.C. § 502(a); but that undermines the purpose of Rule 3002(c) and 3002.1, as well as the trustee's responsibilities to unsecured creditors who stand to benefit from the disallowance (and who might themselves object to the untimely claim if the trustee does not). The fact that debtors and the trustee have additional time to file claims for creditors who do not do so on their own, Fed. R. Bankr. P. Rule 3004, does not really solve the problem because, more often than not, they lack accurate information concerning the amounts due the mortgage holder,[9] and so we may still end the case with an undischarged long-term debt that continues to be in default. The other option, to dismiss and refile hoping for better participation is possible, but unpalatable and wasteful and does not assure a different outcome. While these difficulties may be inherent in the current structure of the Bankruptcy Code and its associated Rules of Procedure, the solution to them must be found elsewhere, and not through drafting plan provisions that attempt to do what the Code does not allow. Hartford Underwriters v. Union Planters, 530 U.S. 1, 14–15, 120 S.Ct. 1942, 1951, 147 L.Ed.2d 1 (2000) ("Achieving a better policy outcome ... is a task for Congress, not the courts."); In re New Energy Corp., 739 F.3d 1077, 1079 (7th Cir. 2014) (judges must "implement the Bankruptcy Code as written, rather than make changes that they see as improvements"); Bethea v. Robert J. Adams & Associates, 352 F.3d 1125, 1127–28 (7th Cir. 2003) ("That argument about what makes for good public policy should be directed to Congress; the judiciary's job is to enforce the law Congress enacted, not write a different one that judges think superior"); Montoya, 341 B.R. at 46 ("A plan should not be used as a sword to change the explicit provisions of the Code to what the parties wish Congress had drafted.").

Confirmation of the debtors' proposed chapter 13 plan, as modified, is DENIED. Any further plan shall be filed within fourteen (14) days.

SO ORDERED.

---

problem and force mortgage holders to provide the needed information by precluding them from offering any omitted information into evidence. Whether or not they succeed remains to be seen.

9. Such a claim must be filed under penalties of perjury, see, Official Bankruptcy Form 410 p.3, so there is the added difficulty of having to affirm the accuracy of what the debtor or trustee may not know to be true.